### Debra L. Whippie v. Robert E. O'Connor

[996 A.2d 1154]

No. 07-473

Present: Dooley, Johnson, Skoglund and Burgess, JJ., and Van Benthuysen, Supr. J., Specially Assigned

Opinion Filed April 16, 2010

*Karen L. Richards* and *Jean L. Murray*, Vermont Legal Aid, Inc., Montpelier, for Plaintiff-Appellee.

*Robert E. O'Connor, Jr.*, Pro Se, South Londonderry, Defendant-Appellant.

■ ■ ¶ 1. **Burgess, J.** Defendant appeals from a partition judgment in which the trial court awarded defendant the option of purchasing plaintiff's share in certain real property, or in the alternative, if defendant did not exercise the option, ordered the property to be sold and proceeds divided according to a court-ordered percentage plan. Defendant claims on appeal: (1) that the court's findings are not supported by the evidence; (2) that the court, in determining the equities, was swayed by irrelevant sympathy for plaintiff; and (3) that the court failed to consider available evidence that plaintiff was not entitled to any share at all. Defendant also claims that the court conducted an accounting in this action that included arithmetic errors and factors outside the scope of partition, while excluding costs defendant claims he is owed. Finally, defendant takes exception to the court's allowing plaintiff an offset for rental value against defendant's contribution claims due to his exclusion of plaintiff from the residence.[1] We

---

[1] Defendant makes two other claims that were not preserved for appeal. First, he argues that plaintiff had no right to bring a partition action. However, through his

affirm as to defendant's first three claims and reverse and remand on the remaining claims. In light of the rules we recently announced in *Massey v. Hrostek*, 2009 VT 70, 186 Vt. 211, 980 A.2d 768, and our holdings here, we conclude that it is necessary for the trial court to conduct a new accounting, to consider whether plaintiff's ouster was wrongful and, if so, its duration and how it figures within the overall equities of the partition. On remand, we suggest defendant may also request a ruling on defendant's claim for partial appraisal costs.

## I. Background

¶ 2. Plaintiff and defendant purchased a single-family residence together in 2002. They had been involved in an unmarried relationship for ten years, living together for nine of those years, and had two children together. Initially, defendant sought to purchase a home in his name only, but he could not qualify for the loan on his own. Plaintiff joined in the financing application, and together the parties were able to obtain the two mortgage loans needed to purchase the property. Both parties are listed as borrowers on both mortgages, and both parties' names are on the deed.[2]

¶ 3. The parties testified, and the trial court found, that there was an express agreement between them to share the expenses of the property equally. During their years of cohabiting in rental properties, the parties shared household expenses by paying utility bills and rent from a joint checking account. Under their arrangement, each party contributed half of the amount owed on their bills to a joint account, and plaintiff wrote the checks to pay

---

trial attorney, defendant admitted that the partition statute entitles plaintiff to seek partition and, indeed, the statute explicitly allows any person who holds real estate with another to initiate a partition action. 12 V.S.A. § 5161. Defendant also argues that the court erred by failing to recognize a quasi-contract in this case and unjustly enriching plaintiff. Nowhere in the record — either in defendant's answer, defendant's proposed findings of fact and conclusions of law, or the trial transcript — does defendant raise or refer to these theories. Consequently, defendant did not preserve these issues. In general, we do not address issues on appeal that were not raised before the trial court. *Follo v. Florindo*, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230.

[2] The deed to the property states that the parties own the property as husband and wife, as tenants by the entirety, but, as the court found, both parties agreed in their proposed findings and conclusions that they own the property as tenants in common.

the bills. When they were moving to their new home, defendant discovered that the utilities would not start services due to unpaid bills from the parties' rental residence. Defendant had been placing funds in the joint account for that purpose and was unaware of any overdue utility bills before this time. To pay the overdue balances and initiate utility services at the new property, defendant borrowed between one and two thousand dollars from relatives. To avoid delinquencies with the mortgage payments, defendant began directly paying the mortgage from his own separate account. At a later point, defendant again discovered unpaid bills, and sometime in 2003, again borrowed money from his family to pay overdue household bills.

¶ 4. The parties resided at the property with their children for about two years before their relationship ended. During this time, defendant undertook several projects at the property, including installing a new kitchen floor, replacing the deck, painting the house, installing a new hot water heater, and replacing some doors. The trial court found that the terms of one of the mortgages required some of these projects, and that defendant did the work himself, paying only for supplies at a cost of less than $2000. The parties disputed whether plaintiff paid any expenses for the property while the parties were living there together. The court found that plaintiff paid for at least some household costs during 2002, but, consistent with plaintiff's admissions at trial, the court found that plaintiff stopped paying any of her share of the household costs in early 2003. During 2003 and the years following, plaintiff used her income to cover her personal needs and credit card debt, as well as to purchase clothes for the children.

¶ 5. The parties stopped living together in early 2004. Possession of the property from that time until nine months after plaintiff initiated this action was governed by court orders in two separate family-court matters between the parties. The first matter, which ended the parties' cohabitation, began when plaintiff filed for relief from abuse (RFA) against defendant in January 2004 and was awarded a temporary RFA order, granting her possession of the property. Shortly after plaintiff filed for the RFA order, defendant initiated the second family-court matter — an action for parental rights and responsibilities. In March 2004, the family court issued a final RFA order, by agreement and without findings, that incorporated the terms of a temporary order for

parental rights and responsibilities awarding defendant temporary custody of the children and possession of the home. The final RFA order expired in August 2004.

¶ 6. The trial court found that plaintiff asked defendant if she could return to the home several times during the period when he had possession of the property. Defendant refused and, at some point after the RFA order expired, defendant issued a "no trespass" letter to plaintiff because he believed she had been entering the property and taking his things. When plaintiff initiated this partition action in January 2005, defendant and the children were still residing at the property, and plaintiff was living elsewhere, per the temporary parental rights and responsibilities order still in effect at that time. It appears that the parties have maintained these living arrangements to the present.

¶ 7. After a failed attempt to settle this matter through mediation, a trial was held at which plaintiff and defendant were the only witnesses. In addition to their testimony, plaintiff offered into evidence copies of the mortgages, a copy of the deed, a copy of the 2007 tax bill for the property, statements of payments on the mortgages, a 2006 appraisal of the property prepared for this litigation, a copy of the final RFA order, and some information concerning rental values for Bennington County. Defendant stipulated to the admission of all but the rental information and, according to the record, offered no additional evidence.

¶ 8. In its order, the trial court weighed many of the above facts as equitable considerations in favor of each party. The court weighed in plaintiff's favor the fact that the property could not have been purchased by defendant alone and that the parties were able to obtain the mortgages only through plaintiff's joint application. Additionally, the court found that defendant acquiesced to some of plaintiff's failures to pay property expenses and that when plaintiff stopped those payments she nonetheless helped with family expenses by purchasing clothes for the children. The court also counted in plaintiff's favor the children's Supplemental Security Income (SSI) based on plaintiff's disability, concluding that it was a benefit to defendant in defraying household costs. On defendant's side, the court concluded that the parties had not shared equally in paying property expenses, although defendant's payments were not as "one-sided" as he claimed and defendant had acquiesced in part to plaintiff's lesser contributions. The court made an explicit finding that it was defendant who had paid the

full $47,000 due for mortgage and tax payments on the property from the date of purchase to the date of trial.

¶ 9. In addition to these findings and equitable considerations, the court rejected two of plaintiff's legal arguments. First, plaintiff argued that Vermont law required the court to presume that, because the parties were cotenants, all of defendant's property-related payments were made on behalf of plaintiff. Without decisively concluding whether payments defendant made before plaintiff sought the RFA order were made on her behalf, the court held that the payments defendant made after that point were not. The second argument declined by the trial court was that defendant ousted plaintiff from the property at the point when the final RFA order granted possession to defendant, and that any credit claimed by defendant for the property expenses paid since the RFA order should be offset by the fair rental value of the property from the time of plaintiff's exclusion. The court refused to find an ouster when the RFA order was in effect, and plaintiff does not appeal from that ruling. Nevertheless, the court did conclude there was "an element of ouster," after the RFA expired, when defendant refused plaintiff's requests to move back into the house and issued her a notice against trespass.

¶ 10. After considering all of these factors, the court determined that the totality of the circumstances favored granting plaintiff $15,216 of the property's equity. This figure represented forty percent of one-half of the $46,081 equity in the home, plus $6000. The court granted plaintiff only forty percent of half of the equity to reflect "her two years of living in the home out of five years of ownership and helping with expenses," including buying clothes for the children and the application of the SSI benefits to their "overall expense." In other words, it appears that plaintiff received forty percent of one-half of the equity because the court found, as of the time of trial, plaintiff had lived at the property and paid at least some expenses for about forty percent of the total time the parties owned the property. The court added $6000 to that figure to compensate plaintiff in some part for the "element of ouster" in the later years of joint ownership when defendant enjoyed exclusive use of the property, and in recognition of the fact that plaintiff's income was necessary to qualify for the home financing. The court declined to credit plaintiff with the rental value for the full period of her post-RFA exclusion, explaining that to do so would inequitably ignore defendant's efforts to preserve the

property from foreclosure or sale by keeping up with the mortgage and other necessary expenses.

¶ 11. Several of defendant's claims on appeal are essentially disputes with the trial court's findings of fact. Defendant argues that the court incorrectly found that he acquiesced in some of plaintiff's nonpayments of the mortgage, taxes, utilities, and other necessary costs associated with the property. He also contends that the court was incorrect in finding that plaintiff paid any of those expenses, complaining that plaintiff offered no documentation of her claimed financial contributions, and that her mere testimony that she contributed was unworthy of consideration. Finally, he takes issue with the court in describing defendant as a contractor, in appearing to be sympathetic to plaintiff's various health issues, and in considering only plaintiff's proposed findings and conclusions.

¶ 12. We have reviewed each of these claims of error and determine that they are without merit. We uphold the trial court's findings as long as they are supported by any credible evidence in the record, *Siegel v. Misch*, 2007 VT 116, ¶ 5, 182 Vt. 623, 939 A.2d 1023 (mem.), and all of the court's factual findings, save its finding that defendant was a contractor, have adequate record support. Testimony presented from personal knowledge is evidence, and it is within the province of the trial court to make credibility determinations regarding witness testimony. *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997). We give great deference to the trial court's weighing of the evidence presented at trial. See, e.g., *id.* Any error in characterizing defendant's occupation or receiving evidence about plaintiff's health was harmless, as it is apparent from the court's conclusions that it considered neither of these factors in balancing the equities in this case. See V.R.C.P. 61 (defining harmless error).

¶ 13. Defendant's claim that the trial court unfairly considered only plaintiff's proposed findings and conclusions, and not defendant's, in rendering its final order is similarly meritless. He suggests the trial court's use of plaintiff's proposed findings indicates that it failed to consider all of the relevant evidence. It is clear, however, from a comparison of the trial court's order to the parties' proposed findings of facts and conclusions of law that the trial court adopted some of both defendant's and plaintiff's proposals and rejected others. Further, had the trial court

adopted only plaintiff's proposed findings and conclusions, it still would not warrant setting aside the court's findings. Vermont Rule of Civil Procedure 52(a)(2) explicitly provides that we will not set aside the trial court's findings of fact, even when they are adopted verbatim from one party's proposed findings, unless the findings are clearly erroneous. Additionally, the trial court's adoption of one party's proposed findings is not a basis for demonstrating that the trial court failed to consider all of the evidence. See, e.g., *In re M.B.*, 162 Vt. 229, 239, 647 A.2d 1001, 1006 (1994).

■ ■ ¶ 14. Defendant attacks the court's conclusion that plaintiff shares any interest in the property, given what he describes as a wholesale breach of their original agreement to equally share the house expenses. According to defendant, plaintiff paid nothing and so should retain no interest whatsoever. Plaintiff testified to the contrary, however, that she did pay into the joint house account until early 2003, and the court credited this evidence. Regardless of defendant's disagreement with it, plaintiff's testimony is evidence in support of the court's findings, and findings supported by credible evidence will not be disturbed on appeal. *Siegel*, 2007 VT 116, ¶ 5. Defendant's argument further fails to recognize the legal significance of the underlying conveyance that established their tenancy in common. Unless there is documentation to the contrary, it is presumed that tenants in common hold equal shares in the title. 7 R. Powell, Powell on Real Property § 50.02[5], at 50-11 & n.21 (M. Wolf ed. 2008) (collecting cases); see *Massey*, 2009 VT 70, ¶ 17 & n.2 (conveying joint title establishes a presumption of ownership in equal shares where record provides no rebutting evidence). As determined by the trial court, the parties here initially agreed to split equally the expenses of home ownership when they took title. Failure by a cotenant, after the conveyance, to pay its share of the realty expenses according to the agreement is an equitable factor for consideration in a partition action as in the instant case. *Begin v. Benoit*, 2006 VT 130, ¶ 6, 181 Vt. 553, 915 A.2d 786 (mem.) (interpreting partition statute as giving "the trial court as many options as possible to achieve equity between the parties," including evaluation of parties' respective contributions to property expenses and refinancing) (quotation omitted).

## II. Legal Standards Bearing on the Accounting

¶ 15. We turn now to defendant's claims relating directly to the trial court's accounting and award of $15,216.31 of the property value to plaintiff. Some of these claims are unfounded, but we agree that several errors in the accounting method and equitable allocation warrant reversal and — in the case of the initial partition accounting — reconsideration. We begin by outlining basic rules that govern the accounting between these cotenants, several of which were recently stated for the first time by this Court in *Massey v. Hrostek*, 2009 VT 70, decided after the trial court issued its decision in this matter. Absent a compelling alternative approach, once cotenancy is established, the partitioning court should split the property in half and then consider equitable factors in the following order. First, the court may determine the contributions of each party towards the actual expenses of the house, including mortgage, insurance, taxes, utilities, repairs, and improvements. These contributions can credit a party for payment of other expenses, but only where, by agreement with the other cotenants, the claiming party paid more than its pro-rata share of such other expenses *in lieu of* a pro-rata contribution to its shared obligation on the real property bills.[3] Second, the court should credit against contribution claims a rental value offset for any period of exclusion of a party ousted from the premises by the cotenants in possession. The court should next consider other equities cognizable in partition and then any allocation of costs and fees arising from partition.

### A. Relevant Factors in a Partition Accounting

¶ 16. Despite the presumption of equal contribution and equal interest, *Massey*, 2009 VT 70, ¶ 17, when one cotenant pays more than his or her share of property-related expenses, she or he is entitled to proportionate reimbursement, or credit, from the other tenants to reflect the proportionate burden of co-ownership.

---

[3] That the other payments must be an explicit, rather than implied, substitution for shared realty expenses is necessary in partition cases to keep within the limited scope of the partition statute and to avoid bending this statutory cause of action into a pseudo-divorce distribution of assets and debts between parting, unmarried homeowners. 12 V.S.A. § 5161; *Begin*, 2006 VT 130, ¶ 9.

*Id.* ¶ 21.[4] In calculating any reimbursement due, the court must account for all of the property expenses paid by each party. These include not only the mortgage payments, but also the necessary utilities, taxes and insurance, and maintenance expenses towards the home. See *Massey*, 2009 VT 70, ¶ 22.

¶ 17. While there is no error in the trial court's finding that plaintiff contributed to some of the property expenses during 2002, the court must determine on remand — at least generally — the object and amount of such contributions, arriving at a discrete figure separate and apart from any claims for offsets. To illustrate our concern here, the court found the parties' different levels of contributions only in the broadest terms during their cotenancy and then arrived at a fractional respective financial participation that does not comport with the findings. The court noted that defendant assumed responsibility for paying the mortgage at or near the time of closing and that after about a year plaintiff stopped contributing to household costs altogether. Yet the court reduced plaintiff's half-share by three-fifths, based, in part, on the court's conclusion that she "helped with expenses" during two out of the five years — a conclusion inconsistent with its own finding and plaintiff's own acknowledgment that her contributions ceased sometime during the second year.[5]

¶ 18. Not appearing in the court's analysis is an accounting of what portion of contributions plaintiff and defendant each made

---

[4] Plaintiff argued at trial and in her brief here that defendant has no right to contribution because there is a legal presumption that payments made by one cotenant are made on behalf of all cotenants, but cases cited by plaintiff in support of her proposition are not on point. See *Ransom v. Bebernitz*, 172 Vt. 423, 432, 782 A.2d 1155, 1162 (2001); *In re Estate of Neil*, 152 Vt. 124, 129, 565 A.2d 1309, 1312 (1989), *overruled in part on other grounds by In re Estate of Johnson*, 158 Vt. 557, 558-59, 613 A.2d 703, 704 (1992); *Waterman v. Moody*, 92 Vt. 218, 234, 103 A. 325, 332 (1918). The selected passages that discuss such a presumption are, in context, only facially relevant. At issue in those cases was whether a cotenant claiming exclusive ownership by adverse possession against another cotenant may rely on payments of property taxes or other expenses as evidence of the open, notorious, and hostile acts necessary to establish adverse possession. The statements in those cases, presuming property tax payments are made on behalf of all cotenants, simply rejected the notion that tax payments by one cotenant could prove adverse possession against other cotenants. The holdings in those cases are no impediment to cotenants making otherwise valid contribution claims.

[5] Although the court was not persuaded that plaintiff's failure to contribute was "as one-sided as . . . defendant claims," the court offers no description or accounting of what it found to be the credible contributions between the parties.

to taxes, insurance, utilities, repairs and the like during the first and second years while plaintiff lived in the house, or a separate accounting of defendant's contribution after the RFA and parental rights orders that prevented plaintiff from residing at the home. While the accounting need not be precise, a ball-park estimate is insufficient. It may be that the evidence was too vague, but the party with the burden of proof on a particular claim of contribution or offset must bear the risk of failing to prove the necessary financial facts. Nor should the court's evaluation of contribution claims be conflated with its consideration of offsets. Assessment of offsets cannot be evaluated by the trial court or this Court without knowing at least the general proportion of each party's contribution to maintaining and preserving the property in the first place.

## B. Ouster

¶ 19. After assigning contribution credits, offset claims based on ouster should be evaluated. Ousted cotenants have a right to the rental value for the period of exclusion, but ouster requires an absolute finding by the trial court that a possessory tenant has asserted rights in conflict with his cotenants. 7 Powell, *supra*, § 50.03[1][b], at 50-16 to 50-17. The general "presumption against ouster of a co-tenant can be overcome only by some overt and notorious act or acts of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant." *Ransom*, 172 Vt. at 432, 782 A.2d at 1162 (quotation omitted); accord *Scott v. Leonard*, 119 Vt. 86, 102, 119 A.2d 691, 700 (1956) (requiring a notorious act indicating an assertion of ownership in the entire premises to overcome presumption against ouster between cotenants); accord Powell, *supra*, § 50.03[1][b], at 50-16 to 50-17 ("to prove ouster, a tenant in possession must show acts inconsistent with, and exclusive of, the rights of the contenants . . . . The acts of the cotenant claiming title . . . must be in repudiation of the cotenancy . . . ."); cf. *Massey*, 2009 VT 70, ¶ 24 (adopting as a rule that wrongful interference with use and enjoyment of premises by changing locks and security codes warrants finding plaintiff entitled to rental offsets).

¶ 20. Defendant argues that the trial court's reliance upon "an element of ouster" in support of part of its $6000 offsetting award was error. Plaintiff counters that defendant excluded her from the

house after the RFA order expired by issuing the no-trespass notice, thus establishing her right to claim ouster rental value as a defensive setoff to defendant's claim for contribution costs. As appellant, defendant must show there is no credible evidence to support the trial court's conclusion. *Siegel*, 2007 VT 116, ¶ 5.

¶ 21. Both parties agreed that plaintiff was excluded from the residence by defendant's notice against trespass, but defendant testified that the notice was necessary given plaintiff's history of trying to have him jailed when they were in contact and because of her breaking into the house twice to take his tools. The court concluded that the no-trespass notice presented "an element of ouster" and on that basis awarded plaintiff some indistinct part of $6,000 in additional equity.

¶ 22. It may be that the court considered defendant's version of the facts, but found it incredible, unpersuasive, or otherwise insufficient. If so, the court needs to explain why defendant's testimony failed to make a prima facie case for his point, or resolve its weight one way or the other. Also, the court's meaning in concluding that there was "an element" of ouster is not clear. If what plaintiff proved is something less than absolute ouster, then plaintiff did not meet her burden, and the court cannot award a rental offset.

¶ 23. There is left another critical ambiguity. The amount of the court's offset for ouster, within the additional award of $6,000, still bears no accounting relationship or nexus to any facts. Assuming plaintiff sustained her burden to overcome the presumption against ouster, the timing of the ouster was left unsettled by the court's findings, although the record may support a minimum time frame. The court observed that the evidence of when the no-trespass notice came about was "unclear." Indeed, the record does not establish when, exactly, after the expiration of the RFA order, the no-trespass notice was sent.[6] Nevertheless, defendant testified that he issued the notice sometime "past August 17 or 13[, 2004]. That's close to when it was, I guess. I really don't

---

[6] Plaintiff testified only that it occurred sometime in 2004. On appeal, defendant submitted copies of two dated notices against trespass, but these were not introduced in evidence below, so we do not consider their content here. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) (limiting our analysis of evidence to that presented to the trial court); *Condosta v. Condosta*, 142 Vt. 117, 121, 453 A.2d 1128, 1130 (1982) (laying burden on plaintiff to produce a trial record which supports his position on issues raised on appeal).

remember." Given defendant's reference to a particular month in 2004, it seems unlikely that he ultimately remembered no date whatsoever, as opposed to not remembering which day in the month of August 2004 it occurred. If, however, based on the testimony, the court is not satisfied, or cannot describe, that defendant's dispossession of plaintiff was accomplished by any particular time before the hearing, plaintiff's claim for rental offset must fail for inability to measure her ouster by any duration. If, on the other hand, the court can find from the testimony a time at which ouster of plaintiff was achieved, then it can calculate the rental value offset accordingly.[7]

## C. Other Factors

¶ 24. Once contribution and ouster offset are reconciled, the court should consider other equitable claims. Here, defendant argues that the court erred in considering plaintiff's payment of other household expenses in the equities of partition, and defendant disputes the consideration of what the court characterized as his "acquiescence" to plaintiff's failure to abide by her agreement to bear an equal share of the realty expenses. Plaintiff responds that such a balancing is within the trial court's discretion and must be granted deference by this Court.

¶ 25. The court was incorrect to recognize an additional offset in plaintiff's favor based on her income being necessary to obtain the financing to purchase the property. The fact that plaintiff applied for and was a necessary cosigner with defendant on the mortgage application for financing may support the presumption that she owns an undivided one-half interest in the property, but lends nothing to her claim for additional equitable consideration. That the parties' financing was dependant upon plaintiff's co-signature favors plaintiff no more than defendant in the equitable adjustments to their underlying half-portions of the property proceeds. The evidence indicates that both parties' incomes were necessary to obtain the mortgages; neither party suggested, and the trial court did not find, that plaintiff was any more eligible or able to obtain financing sufficient to purchase the property alone than was defendant. Plaintiff neither contributed more, nor had more at risk, than defendant based on the bare

---

[7] This, in turn, assumes the court is satisfied with the relevance, weight, and content of plaintiff's evidence on rental values.

fact that she applied for and was obliged on the mortgage to the same degree as defendant. Plaintiff established no reason for an additional share in the property's value due to her participation in the mortgage application and obligation.

¶ 26. Next we examine defendant's claim that the trial court improperly considered circumstances outside the scope of a partition action. The trial court "has authority to consider all relevant circumstances in order to ensure a just outcome [in a] partition action," but "must restrict itself to the contributions made to the real property." *Begin*, 2006 VT 130, ¶ 9 (quotation omitted). Defendant contends that plaintiff's purchases for the parties' children and payments to general expenses are not relevant to partition and that the court's consideration of those factors was error. We agree.

¶ 27. The court did not find that this plaintiff's expenditures on behalf of the children and payment of other expenses were an agreed-upon substitute for paying her share of the housing costs. Indeed, the court found that plaintiff *continued* these purchases for the children after she stopped contributing towards the house, indicating no additional financial burden in this regard in lieu of her house payments. The court also accounted for the children's SSI benefits, derived from plaintiff's disability and available to defendant for the family's overall expenses, as a contribution from plaintiff. Assuming the children's SSI should be considered at all, no evidence linked such payments to the real property costs after plaintiff quit paying towards the house. Crediting to plaintiff's account for her contributions to general domestic expenses is beyond the scope of the partition statute and is disallowed. See *id.*

¶ 28. It is unclear how defendant's so-called acquiescence to plaintiff's nonpayment, which we understand to mean his apparent lack of action to compel her to pay according to her agreement, would weigh in plaintiff's favor absent some known or reasonably anticipated change of position or other detrimental reliance on plaintiff's part. Consideration of such acquiescence alone, in the context of a domestic relationship, seems a difficult factor to parse in terms of competing equities. The import of defendant's acquiescence to plaintiff's nonpayment, as opposed to plaintiff's apparent acquiescence to defendant's denial of her cotenancy rights by his no-trespass letter, is not evident. The significance of this factor, if still weighed by the court on remand, bears explanation.

### D. Costs and Fees of Litigation

¶ 29. We turn finally to defendant's contention that the court erred in failing to award him costs under the partition statute, including fees for the property appraisal prepared for this litigation and the mediation the parties undertook before trial. The statute provides in relevant part that when a plaintiff in a partition case is determined to hold "a smaller share than alleged in his complaint, the adverse party shall recover against him reasonable costs." 12 V.S.A. § 5170. In a case decided before § 5170 was enacted, we held that where no order regarding allocation of costs in a partition action was issued below, this Court will not make such an order. *Houghton v. Sowles*, 57 Vt. 635, 635 (1885). In any event, there is no question that plaintiff was found to hold what she claimed in her complaint: "an undivided interest in certain lands and premises." The parties agreed that they held the realty as tenants in common. The trial court's finding that the parties originally acquired the property as equals was consistent with the presumption, not rebutted here, that tenants in common have equal title in the commonly owned property. That plaintiff may realize less than the full value of her undivided one-half interest results from equitable adjustments by the court pursuant to the partition action after title was acquired. Consequently, even if § 5170 supersedes the *Houghton* holding, there is still no statutory basis to award costs.

¶ 30. Defendant argues alternatively that the court erred by not offsetting plaintiff's portion of the equity by half of the mediation fee and the property appraisal cost. According to the record, the parties agreed to a specific split of the mediation fee below, and defendant's claim for a different allocation has therefore been waived. Regarding the cost of the appraisal, however, both parties' proposed findings and conclusions included a setoff of one-half the appraisal fee from plaintiff's share of the equity. It is typical for cotenants to allocate the costs and expenses of litigating partition "according to their respective fractional shares." Powell, *supra*, § 50.07[3][e], at 50-46.1. Here, both parties arguably agreed that plaintiff should bear one-half of the cost of the appraisal. While allocating costs is a matter left to the discretion of the court, see, e.g., *Bull*, 170 Vt. at 463, 752 A.2d at 35 (reviewing such allocations only for abuse of discretion), the trial court here was silent on the matter and made no allocation at all.

Absent some explanation, it appears that the court's discretion was entirely, and therefore erroneously, withheld. *Quenneville v. Buttolph*, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263 (reiterating that withholding discretion entirely constitutes an abuse of discretion).

■ ¶ 31. On remand, defendant will also have an opportunity to request that the court review the figures used for the total equity in the property. Defendant's claim of mathematical or calendar error (or both) on that issue is properly directed to the trial court under Vermont Rule of Civil Procedure 60(a), which allows clerical mistakes or errors arising from oversight to be corrected at any time pursuant to a motion by one of the parties or on the court's own initiative.

¶ 32. Finally, plaintiff's motion to strike several of defendant's documents and portions of documents as outside of the record in the case is moot because we did not consider them.

*The trial court's holdings that plaintiff initially acquired an equal half-share as cotenant at the time of conveyance, that she ceased contributing to real estate expenses altogether in early 2003, and that defendant excluded her from the property by his letter of no-trespass, are affirmed. The court's awards of offsets for plaintiff's mortgage application and obligation, her contributions to children's clothing, overall expenses, and the application of the children's Supplemental Security Income to household expenses are reversed. The court's accounting for contribution of the parties is reversed and remanded for an accounting consistent with this decision. The court's award for ouster rental offset is reversed and remanded for a determination, based on the current record, of whether defendant's exclusion action was wrongful and, if so, for a calculation consistent with this decision, if the evidence is sufficient to discern duration and value. Defendant's claim for appraisal fee allocation is remanded to the court for an explicit determination.*