2014 VT 106

## Janet K. Currie v. Paul C. Jané

[109 A.3d 876]

No. 13-261

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.[1]

Opinion Filed September 5, 2014

Motion for Reargument Denied September 30, 2014

---

[1] Justice Crawford was present for conference on the briefs, but did not participate in this decision.

*Michelle A. Kenny* of *Tepper Dardeck Levins & Gatos, LLP*, Rutland, for Plaintiff-Appellant.

*Benjamin H. Deppman* and *Lesley B. Deppman* of *Deppman & Foley, P.C.*, Middlebury, for Defendant-Appellee.

¶ 1. **Robinson, J.** Plaintiff challenges a partition order reflecting the trial court's conclusion that defendant had an 81.7% interest in the home that plaintiff and defendant purchased together, and applying various setoffs for contributions to the maintenance of the home after the parties purchased it. We affirm.

¶ 2. In response to plaintiff's action for partition of jointly owned property, filed in February 2010 in the Addison superior court, the trial court found the following facts. The parties met in 2002 or 2003 and had a romantic relationship. In August 2007, the pair bought a house in Orwell. Prior to the purchase, plaintiff had been renting an apartment within the house from the owners of the property, the Tricketts. After the sale, defendant moved in with plaintiff.

¶ 3. The parties bought the house for $245,000. Defendant's mother contributed $200,000, defendant paid about $4,300 in closing costs, and the Tricketts financed a $45,000 private mortgage to the parties. Defendant's mother did not ask for a promissory note, and her contribution was a gift rather than a loan. In particular, the contribution was intended as a gift to defendant, not to plaintiff. Although both parties signed the promissory note to the Tricketts, plaintiff took responsibility for making those payments, and was supposed to pay the balloon payment on the mortgage in August of 2010. The property was titled to the parties as joint tenants with rights of survivorship.

¶ 4. Sometime after the closing, plaintiff signed an indemnification agreement that expressly acknowledged that defendant paid $200,000 plus the closing costs, that plaintiff was solely responsible for the $45,000 mortgage debt, and that plaintiff would indemnify defendant for any default on that debt.

¶ 5. Plaintiff testified that she always believed that each party had a fifty percent interest in the property, while defendant

testified that his understanding was that he had an interest in the property commensurate with his $200,000 contribution, and plaintiff had an interest commensurate with her $45,000 contribution. The attorney who conducted the closing for the parties corroborated defendant's testimony. The trial court expressly rejected plaintiff's testimony and concluded that both parties understood that their interests were defined by their respective contributions to the purchase price.[2]

¶ 6. The parties later secured a $50,000 home equity line of credit from Merchants Bank. The note was in defendant's name, and he made payments while he lived at the home. Defendant used the line of credit to buy a new $16,500 car, and plaintiff used it to pay off a debt of $10,642 on her car. Plaintiff also used the line of credit without authorization from defendant for miscellaneous expenses.

¶ 7. Defendant has paid for several home-improvement projects, including a pond installation, repairs to the drainage around the house, and masonry work. While defendant lived at the residence, he paid for insurance, taxes, and utilities. His total contributions for repairs and maintenance, plus the closing costs, totaled $72,484.

¶ 8. The parties' relationship ended, and defendant moved out of the house in January 2009. In February, he stopped paying the expenses for the property and ignored plaintiff's requests for assistance.

¶ 9. Since that time, plaintiff has paid for all of the expenses for the home including insurance, utilities, fuel, and expenses to maintain the property, totaling $35,150 at the time of trial. Plaintiff also completed repair work on the house, including "sheetrocking one room, roof work, replacing the oil tank, replacing the water tank, having a rotten section of the barn removed, and replacing two broken windows." These repairs totaled $9,250. Plaintiff claims to have paid property taxes, but failed to provide reliable evidence to the trial court proving that she did so.

¶ 10. Plaintiff has rented out a portion of the house since April 2010, collecting $700 per month. As of the trial, plaintiff had

---

[2] The trial court concluded that the parties did not consider the $4,300 closing costs paid by defendant to be reflected in their proportionate ownership of the property; rather, it was a separate expenditure similar to other subsequent payments by each party discussed below.

earned $27,300 from renting the house. She did not share any of this income with defendant.

¶ 11. Plaintiff did not pay the balloon payment on the mortgage, and in 2010, the Tricketts filed a petition for foreclosure. In November 2011, plaintiff filed for bankruptcy to avoid losing the property.[3] Plaintiff's mother helped her to redeem the property by borrowing $143,000 against the equity in her own home. Plaintiff currently pays $818 per month toward this mortgage on her mother's house used to finance the redemption of the parties' house — $56,691 to the Tricketts, $12,031 for past-due property taxes, and $71,722 to pay off the home equity loan.

¶ 12. In August 2011, in the face of an inevitable foreclosure sale, the court ordered plaintiff to sell the house. Plaintiff did not comply with the order, as she never made herself available for a realtor to see the interior of the property in order to list it. In November 2011, the court found plaintiff in contempt on that basis. In its decision below the trial court found that plaintiff intentionally failed to follow up to list the house.

¶ 13. In the partition action, plaintiff sought to keep the house and buy out defendant's interest. Defendant wanted the property awarded to him so that he could sell it and then disburse the amounts allocated by the court to plaintiff. Neither party sought to divide the property into two lots. The property was appraised at $240,000.

¶ 14. The parties submitted the matter to the court.[4] On the basis of the above findings, the trial court analyzed the parties' interests and respective obligations as follows. First, it concluded that when the parties purchased the property they intended to own it in shares proportionate to their original contributions: 81.7% to defendant, and 18.3% to plaintiff.

¶ 15. Second, the court considered all of the various contributions by the parties to maintaining and improving the property, as well as the rental income that plaintiff received, and attempted to calculate setoffs.[5] The court reasoned that, in contrast to its finding as to how the parties intended to own the equity in their

---

[3] The trial court dismissed the partition action in response to the bankruptcy proceeding, but then reopened it after the bankruptcy case ended.

[4] The parties apparently waived the appointment of commissioners.

[5] The court also considered expenses, such as utilities, that are arguably better viewed as costs of day-to-day living rather than costs of maintaining the property.

property, they intended to contribute equally to the home's upkeep and share in its benefits. Accordingly, the court calculated its setoffs on the assumption that the parties shared equal responsibility for the maintenance and upkeep of the house. It also concluded that plaintiff did not oust defendant from the property such that defendant was entitled to payment from plaintiff for half the rental value of the total property.

¶ 16. Turning to the numbers, the trial court concluded that plaintiff had put a total of $187,400 into the property (including the $143,000 borrowed against her mother's house to redeem the property), but deducted two items: first, half of the rental payments she had received after defendant left, on the theory that she should have shared the rental payments with defendant, and second, money for funds plaintiff had misappropriated from defendant, on the theory that she should not get "credit" for paying off defendant's home-equity line to the extent it was used to finance personal expenditures undertaken without defendant's authorization. Accordingly, the trial court concluded that plaintiff's adjusted post-purchase contributions were $165,350, and defendant's were $72,484, leaving defendant with a net obligation to plaintiff for post-purchase contributions of $46,433.

¶ 17. The trial court gave plaintiff the option of buying out defendant, on a short timetable, for $158,144 (calculated by the court as the $240,000 value of the property, less $46,433 multiplied by defendant's 81.7% interest in the property). Alternatively, if plaintiff did not buy out defendant within thirty days, the court would issue a writ of possession for defendant so that defendant could sell the house and divide the proceeds so that plaintiff would receive $46,433 off the top, and the parties would divide the remaining equity 81.7% to 18.3%.

¶ 18. On appeal, plaintiff argues that the trial court's allocation of 81.7% of the equity in the jointly owned property is not supported by the evidence, and that the trial court's requirement that plaintiff pay defendant $158,144 to buy out his interest is clearly erroneous and inequitable.

I.

¶ 19. We will uphold the trial court's findings as long as they are supported by any credible evidence in the record. *Whippie v. O'Connor*, 2010 VT 32, ¶ 12, 187 Vt. 523, 996 A.2d 1154. We review questions of law de novo. *Office of Child Support ex rel. Lewis v.*

*Lewis*, 2004 VT 127, ¶ 6, 178 Vt. 204, 882 A.2d 1128. And we review the trial court's exercise of discretion in applying the equitable remedy of partition for abuse of discretion. *Weed v. Weed*, 2008 VT 121, ¶ 16, 185 Vt. 83, 968 A.2d 310.

¶ 20. ■ In this case the trial court properly acknowledged the statutory presumption that when people purchase property together, absent other evidence, there is a legal presumption that they share equal ownership interests. 27 V.S.A. § 2(b)(2)(A) ("Unless the instrument creating a joint tenancy contains language indicating a contrary intent . . . [i]t shall be presumed that the joint tenants' interests are equal."). It concluded, though, that the evidence in this case was sufficient to rebut the presumption. It relied on the testimony of defendant and the lawyer who managed the closing and who was employed by plaintiff at the time of the closing; the post-closing indemnification agreement acknowledging defendant's $200,000 contribution and assigning sole responsibility for the $45,000 debt on the property to plaintiff; and its conclusion that, for a host of reasons, plaintiff was not a credible witness.

¶ 21. ■ Plaintiff suggests that where the deed titles property to joint tenants with rights of survivorship, the presumption of equal ownership interests is conclusive. We disagree. The presumption reflected in 27 V.S.A. § 2(b)(2)(A) is an evidentiary presumption, subject to rebuttal. See, e.g., *Whippie*, 2010 VT 32, ¶ 14 (recognizing that presumption of ownership in equal shares is rebuttable). In *Whippie* we held that "[d]espite the presumption of equal contribution and equal interest, when one cotenant pays more than his or her share of property-related expenses, she or he is entitled to proportionate reimbursement, or credit, from the other tenants to reflect the proportionate burden of co-ownership." *Id.* ¶ 16 (citation omitted); see also *Massey v. Hrostek*, 2009 VT 70, ¶ 17, 186 Vt. 211, 980 A.2d 768, *overruled in part on other grounds*, *Whippie*, 2010 VT 32, ¶¶ 13-17 (concluding that trial court's finding that one party intended to convey nothing was unsupported by record, and was therefore insufficient to rebut the presumption established by 27 V.S.A. § 2(b)(2)(A)).

¶ 22. ■ We have identified various factors relevant to the partition accounting, including all of the property-related expenses paid by each party, such as mortgage payments, necessary utilities, taxes, insurance, and maintenance expenses. *Whippie*, 2010 VT 32, ¶ 16. Other courts have recognized that unequal

contributions to the purchase price of the property may be a significant factor, though the significance of this factor may depend on whether the other evidence suggests that the party who contributed more intended to make a gift by doing so. See, e.g., *Felderman v. Zweifel*, 346 S.W.3d 386, 389 (Mo. Ct. App. 2011) (stating that evidence that co-tenants who contributed unequally toward purchase of property may rebut presumption of equal ownership, but such evidence may also be explained by evidence of intent to make enforceable gift); *Anderson v. Woodward*, 2009 MT 144, ¶¶ 17, 18, 207 P.3d 329 (holding that evidence of unequal contribution to asset may rebut presumption that joint tenants own equal shares, but does not necessarily apply where relationship between parties indicates that one might have intended to make gift to other); *Pederson v. Brook*, 851 A.2d 627, 630 (N.H. 2004) (concluding that under partition statute, parties' contributions to acquisition of, maintenance for, repair of, preservation of, and improvements to property, as well as duration of occupancy and nature of use, contractual agreements as to disposition of property, and status of legal title are all factors court may consider when determining whether presumption of equal ownership has been rebutted).

¶ 23. ▮ ▮ In this case, the trial court relied on the following facts: the parties' undisputed substantially divergent contributions to the price of purchasing the property; the fact that defendant's contribution was financed by a gift from his mother to *him*; plaintiff's execution of the indemnification agreement acknowledging defendant's contribution to the purchase price and agreeing to indemnify him in connection with the debt incurred to finance *her* share of the purchase price; and the testimony of two out of three witnesses, including the attorney who represented the parties at the closing, as to their understanding of the parties' intentions when they purchased the property. The trial court found that defendant had not previously purchased real estate, and was not aware that he could have asked the lawyer to state what percentage interest each of the parties would have. The trial court concluded on the basis of plaintiff's prior actions and inconsistent testimony that plaintiff was not a credible witness. We will not set aside the trial court's findings concerning the credibility of witnesses. *Nystrom v. Hafford*, 2012 VT 60, ¶ 12, 192 Vt. 300, 59 A.3d 736. We conclude that the trial court's finding that the parties intended to own the property in an 81.7% to 18.3%

 

proportion was amply supported by its findings and the underlying evidence.

## II.

¶ 24. Plaintiff next argues that the trial court's order effectively required her to pay over $300,000 to keep the property (the $143,000 she borrowed from her mother to redeem the property, for which she was liable independent of the trial court's decision, and the $158,144 the court ordered that she pay defendant). That is more than the $240,000 that the property was actually worth and was thus, plaintiff argues, inequitable and a windfall to defendant. Plaintiff does not identify particular flaws in the trial court's analysis but instead argues that the outcome of the trial court's calculations was inequitable.

¶ 25. We review the trial court's assessment of equitable remedies, like partition, for abuse of discretion, and will uphold the trial court's judgment unless the trial court has withheld its discretion entirely or exercised it "for clearly untenable reasons or to a clearly untenable extent." *Weed*, 2008 VT 121, ¶ 16 (quotation omitted). We cannot conclude on the basis of plaintiff's general arguments that the trial court abused its discretion.

¶ 26. ■■■ First, the trial court did not abuse its discretion in giving plaintiff a short window in which to buy out defendant. The court recognized that in a partition action, "partition in kind is preferable to assignment, and assignment is preferable to sale." *Wilk v. Wilk*, 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002). In this case, neither party argued for partition in kind. The court gave plaintiff an opportunity to buy out defendant's interest subject to a short time limit unless the parties negotiated a different period. The court explained the short timeline by noting that plaintiff was previously in contempt of a court order to sell the property, and has been aware of the possible result of the partition action for a long time. Moreover, given that its decision was in June, the court worried that a more extended deadline would make it difficult to sell the house that year. These decisions were within the trial court's discretion to achieve equity. See *id.* at 346, 795 A.2d at 1194 (statutes governing partition "should be interpreted to give the trial court as many options as possible to achieve equity between the parties, including an expansive power to assign property to one of the co-tenants").

¶ 27. ■ Nor did the trial court abuse its discretion in determining the amount plaintiff would have to pay to buy out defendant's interest. Plaintiff's arguments fail to recognize the reasons that her buy-out cost plus existing debt on the property exceed the property's value. The $143,000 debt plaintiff accrued to redeem the property exceeded the original principal of plaintiff's $45,000 debt on the property by nearly $100,000. In addition to repaying the original debt, the $143,000 to redeem included the cost of unpaid and past-due property taxes, $72,000 to pay off a line of credit secured by the property but used for a variety of personal expenses, and interest and fees associated with the foreclosure of the property. In addition, the trial court reduced plaintiff's credit to account for purchases she made using defendant's personal checks and credit card without his authorization. Given the extensive debt and additional expenses built up by the parties in connection with, or attached to, the property, it is no surprise that plaintiff would have to pay more than the value of the property to satisfy her debt to defendant and keep the property.

¶ 28. Moreover, defendant, too, stands to lose relative to his initial investment and the value of this house. He initially invested $200,000 to purchase the house. He contributed $72,484 to closing costs, taxes, insurance, and other costs of carrying the house. If plaintiff buys him out with a payment of $158,144, he will be out of pocket in an amount exceeding $110,000 in connection with this property — hardly the windfall that plaintiff claims. Putting aside the carrying costs for the house, he will net $42,000 less than he paid for the house. Given the parties' decisions and actions, everybody was bound to lose financially in connection with this partition.

¶ 29. ■ The trial court's approach was not the only possible approach, but was within its broad discretion. We recently explained:

> Absent a compelling alternative approach, once cotenancy is established, the partitioning court should split the property in half and then consider equitable factors in the following order. First, the court may determine the contributions of each party towards the actual expenses of the house, including mortgage, insurance, taxes, utilities, repairs, and improvements. These contributions can

credit a party for payment of other expenses, but only where, by agreement with the other cotenants, the claiming party paid more than its pro-rata share of such other expenses *in lieu of* a pro-rata contribution to its shared obligation on the real property bills. Second, the court should credit against contribution claims a rental value offset for any period of exclusion of a party ousted from the premises by the cotenants in possession. The court should next consider other equities cognizable in partition and then any allocation of costs and fees arising from partition.

*Whippie,* 2010 VT 32, ¶ 15 (footnote omitted). The trial court here considered these factors, exercising discretion in applying them. It concluded, based on the evidence presented, that the parties intended to hold disproportionate underlying equity on account of their disparate initial investments, but intended to bear the ongoing carrying costs of the property equally. It credited both parties for their contributions — including crediting plaintiff for contributions to redeeming the property against a foreclosure with respect to which she had previously agreed to indemnify defendant. And it gave both parties the benefit of rental payments. It reduced plaintiff's credit on account of her unauthorized expenditures of defendant's monies. Although the trial court's decision to apply the credit in plaintiff's favor on account of her proportionately higher net contributions against the full value of the property, rather than against defendant's interest in the property, may have deprived her of the full value of the credit the trial court assigned her, this discrepancy is more than outweighed by the benefit to plaintiff of the trial court's crediting her entire contribution to redeem the property, including that portion that covered expenses arguably within the indemnification agreement. Accordingly, we conclude that the trial court's partition order was within its discretion.

*Affirmed.*