Vermont Superior Court
Filed 09/29/25
Orange Unit

VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-02069

Craig Wich v. Laura Corcoran

# FINDINGS, CONCLUSIONS, AND JUDGMENT

This is a partition action between former spouses concerning their marital home in Strafford, Vermont. Plaintiff, Craig Wich, seeks to partition the property and remove the parties' joint ownership. Defendant Laura Corcoran does not dispute the need or interest in ending the parties' joint ownership. Instead, the dispute in this case primarily revolves around the equities, contributions, and value each party should receive in the property.

As shown below, the Court finds that the ownership of the parties, as established in their 2007 divorce, warrants an award of 49.6% interest to Mr. Wich and 50.4% interest to Defendant Laura Corcoran. The Court finds that the value of the property is $1,100,000. The Court further finds that the claims by the parties for expenses and costs of ouster have either grown stale or have been waived through the actions of the parties. As a result, the Court directs that Ms. Corcoran shall have 90 days to obtain financing to buy out Mr. Wich's interest. If she cannot, then Mr. Wich shall have 90 days to obtain financing and buy out Ms. Corcoran's interest. If neither party is able or willing to buy out the other's interest, the Court shall set a hearing for the parties to present proposals for a sale of the property pursuant to 12 V.S.A. §§ 5175, 5176.

## I. Findings of Facts

Mr. Wich and Ms. Corcoran married in 1990 and jointly purchased the property at 2521 Miller Pond Road in Strafford, Vermont (the "Property") in October of 1994. In the deed, the parties take the property as husband and wife, and there is no indication that either took a greater or lesser interest than the other. The Property is a 65.2-acre parcel with a 3-bedroom primary residence and outbuildings, including horse barns. Parties paid $170,000 for the Property. After buying the Property, the parties

had two children together.[1]  Both parties lived at the Property as their primary residence until 2001.  At that time, Ms. Corcoran filed for divorce and sought a relief from abuse order against Mr. Wich.  From that point forward, Mr. Wich stopped living at the Property and has only returned to the Property once, in 2007, to retrieve personal possessions.

In 2003, Ms. Corcoran moved with the children to Florida.  Mr. Wich moved to Florida shortly thereafter.  In 2004, the Orange County Superior Court's family division ruled on Ms. Corcoran's divorce action.  The Family Court decided the issue of parental rights and responsibilities and parent-child contact between the parties.  Due to the parties' move, the Family Court declined to address the property division and spousal support issues or grant the decree of divorce.  Shortly thereafter, Ms. Corcoran filed for divorce in Florida.  In May 2007, the Florida Family Court issued a decree of divorce.  The Florida Court noted that the divorce process had been marked by "mutual acrimony," and that the parties had "mutually financially devastated themselves through endless litigation."  Ex. 2 at 29, 30.

As part of the decree the Florida Court valued the Property at $405,000 and awarded Mr. Wich $200,902 of the value and Ms. Corcoran  $204,099.  These values work out to 49.6% of the value for Mr. Wich and 50.4% for Ms. Corcoran.  The Court also assigned $7,300 in real estate taxes to Ms. Corcoran.  The Court also assigned Attorney Scott McGee's outstanding, unpaid invoice of $170,000, the MSC Mortgage of $15,000, and the Ledyard National Bank Mortgage of $54,556 equally between the parties.  Apart from the assignment of these costs and values, the Court did not assign the property to either party or order the partition or sale of the property.[2]

Subsequent to the divorce, Ms. Corcoran paid both her and Mr. Wich's share of the MSC Mortgage and Ledyard Bank Mortgage balances.  Ms. Corcoran testified that these payments were different than the amounts assigned by the Florida Family Court.  Ms. Corcoran testified that with additional interest, she actually paid $78,790.59 to satisfy the Ledyard mortgage and $13,352.90 to satisfy the MSC mortgage.  The Court finds this testimony to be credible.  Mr. Wich did not contribute to either payment and does not dispute his non-contributions.

---

[1] Both children are presently adults.

[2] While Ms. Corcoran argues that the Florida Court did not assign the property or order partition due to a lack of jurisdiction, she cites no authority for this proposition, and the Florida decision is silent on this issue.  While it is true that the Florida Family Court did not have in rem jurisdiction over the Vermont property, it did have personal jurisdiction over the parties and authority to divide ownership interests in the couples' property.  See *Poston v. Poston*, 160 Vt. 1, 5–6 (1993) (discussing the issue of long-arm jurisdiction over parties to a divorce); 27C C.J.S. *Divorce* § 1287 (2025 update) (noting that courts are obligated to give foreign divorces full faith and credit when the issuing court has proper jurisdiction).  There is no evidence to suggest that the Florida Court lacked jurisdiction over the parties or believed it lacked the authority to issue a decision directing one party to transfer their ownership to the other.

In 2007, after the Florida divorce decree, Ms. Corcoran and the children moved back to Vermont and took up residence at the Property. Mr. Wich has remained in Florida. From 2001 forward, Ms. Corcoran has paid all expenses, necessary or otherwise, on the Property. This has included all property tax payments, homeowner's insurance, heating oil, electric, maintenance, and repairs. Mr. Wich has not contributed to the costs of the house. Mr. Wich has not resided at the house since 2001, and he has not entered the property since 2007.

In August of 2007, Mr. Wich filed a partition action under Docket No. 210-08-07 Oecv.[3] This matter was stayed due to Ms. Corcoran's notice of bankruptcy. The partition action was formally dismissed the following year. The Court made no findings made and took no action regarding the parties' ownership interests or equities in this short-lived docket.

Mr. Wich testified that he felt unwelcome at the Property and pointed to Ms. Corcoran's actions regarding their shared parenting and prior restraining orders. This evidence is consistent with the Florida Court's findings regarding mutual acrimony between the parties but falls short of establishing any type of termination of Mr. Wich's rights in the property. None of the actions or communications effectively state that he is no longer the owner of the property or that he lacks any possessory right or interest in the property. These communications and actions have much more to do with the fact that Ms. Corcoran did not want to be around Mr. Wich, except when necessary.

At the same time, Ms. Corcoran did not take any action contrary to Mr. Wich's ownership. While she paid the expenses, there was credible evidence that in 2016, she offered to purchase his interests in the property when she was considering selling the house. None of this constituted an assertion of absolute ownership or exclusion of Mr. Wich from the property.

For the16 years following their divorce, Ms. Corcoran resided at the Property and raised the parties' children. There is no evidence that either party made a serious demand or concerted effort to change this status quo. There is evidence that the parties had an oral agreement that Ms. Corcoran could remain in the house and that Mr. Wich would not bring an action until the parties' last child completed college. Mr. Wich acknowledged this agreement at trial and noted that he consciously chose to hold off from enforcing his rights in the property in order to allow the children to remain at the property and to grow up there. Mr. Wich filed this partition action after the Parties' youngest graduated from college in 2023.

---

[3] The parties made reference to this action in their testimony, and the Court takes judicial notice of this docket. *In re A.M.*, 2015 VT 109, ¶ 31 (noting that a court make take judicial notice of its own respective records).

Since 2007, Ms. Corcoran has used the property as a primary residence for herself and the children, as a place of business, and as a farm to raise and train horses. From 2017 until 2023 when the present complaint was filed, Ms. Corcoran spent $103,217.25 to maintain the Property. These expenses included property taxes, utilities, repairs, and other expenses.

There is no evidence that there were any major improvements done to the property during her occupancy that altered the value. Neither party offered a credible explanation as to why the property is worth approximately 647% than when they originally purchased it. This increase in value over 30 years from $170,000 to $1,100,000 appears to be attributable to market forces outside of the control of either party. The Court takes judicial notice under V.R.E. 201 that land and property values in Vermont have substantially increased over the past 20 years and that landowners have seen increases in value similar to what has occurred with the current property.

## Legal Conclusions

### A. *Statute of Limitations & Ouster*

As a preliminary matter, the Court is confronted with a question of statute of limitations. In her post-trial briefing, Ms. Corcoran notes that Mr. Wich has sat on his rights in the property for 16 years, and he has not sought to enforce these rights during that time. Ms. Corcoran argues that this constitutes a waiver of his interests in the property, and that Mr. Wich's only right is to return to Florida, seek an amendment of the divorce order, and enforce it through the Florida courts.

This position misperceives the parties' ownership interests in the property and the right of partition. Prior to the divorce, the parties owned the property as tenants by the entirety. After the divorce, because ownership was not otherwise assigned, the parties' ownership interests remained, but the nature of the ownership changed. When a couple divorces and property so held is not otherwise accounted for, the ownership automatically transforms into a tenancy-in-common. *Preston v. Chabot*, 138 Vt. 170, 175 (1980) ("The trial court analogized the present situation to a divorce, which under Vermont law destroys the tenancy by the entirety and creates by operation of law a tenancy in common among the parties.").

In this case, the salient feature of the 2007 Florida family court order is that it rendered the parties divorced and did not assign or otherwise order the parties to transfer their interest in the property. Therefore, the parties became roughly 50/50 owners of the Property. What the parties

elected to do after the divorce goes to the equities and rights of contribution, but does not alter the fact that they were and remain co-owners of the property.

Similarly, the Court does not find that there has been an ouster in this matter. To establish ouster between co-tenants, "requires an absolute finding by the trial court that a possessory tenant has asserted rights in conflict with his cotenants." *Whippie v. O'Connor*, 2010 VT 32, ¶ 19. There is a general presumption against ouster between co-tenants because each has an undivided right to use and occupy the lands. Id. Only when such use and occupancy indicates an assertion and right to fully and completely exclude the other co-tenant, usually through an open and notorious action indicating sole ownership, does the presumption against ouster burst. Id. Only at that time can the Court find that the other party has been ousted. Id.

The evidence in this case does not support any conclusion that Ms. Corcoran sought to assert any such rights in the Property that would exclude Mr. Wich's ownership. The evidence is that Mr. Wich consented to Ms. Corcoran living on the Property with the children. During this time he did not seek to return to the area, live at the Property, or enter it without Ms. Corcoran's permission. Similarly, Ms. Corcoran did not attempt to sell or refinance the property without Mr. Wich or deny his ownership interests. In 2016, she even approached him about a buyout of the property. Effectively, Mr. Wich did not seek access, and Ms. Corcoran did not seek contributions for the expenses that she incurred to maintain the house that she was occupying.

While not reduced to a formal agreement, the facts show that Mr. Wich held off on asserting his interests in the property, and Ms. Corcoran occupied it and maintained it, pursuant to this ownership arrangement. At no time was there a notorious action or definitive demand that would overcome the legal presumption against ouster. Id. As a result, the Court finds no ouster to have occurred.

In other words, the evidence shows that the parties purchased the property in 1994 as husband and wife, which created an ownership interest in spouses as tenants by the entirety. In 2007 when they divorced, this interest converted as a matter of law to tenant in common. That same year, Ms. Corcoran resumed her residency at the property. It appears that Mr. Wich began a partition action shortly thereafter but abandoned the effort due to Ms. Corcoran's bankruptcy.[4] Subsequently, the

---

[4] Neither party argues that the bankruptcy altered their ownership interest, and this property, as Ms. Corcoran's primary residence, would have been exempt in whole or part from attachment or execution. 27 V.S.A. § 101

parties arrived at an oral agreement that Ms. Corcoran could remain in the home with the children until the last child had graduated college.[5]

The facts show that the parties largely abided by this agreement. Mr. Wich remained an owner in title of the property, but he allowed Ms. Corcoran to occupy and use the property while he remained in Florida. Ms. Corcoran paid all expenses associated with the property but had free reign to use and enjoy the property.

### B. Partition

Mr. Wich has now decided that he does not wish to continue co-owning the property and seeks a partition. 12 V.S.A. § 5161. The partition statutes are remedial statutes and should be construed liberally. *Wilk v. Wilk*, 173 Vt. 343, 345–46 (2002).

#### 1. Partition statutes act as a series of waterfalls.

The first cascade requires the Court to determine the nature of the parties' ownership interests based on the pleadings and evidence. 12 V.S.A. §§ 5163, 5169, and 5170. If, in fact, Plaintiff has an interest in the real estate, the Court must order a partition to occur. Id. at § 569. In this case, the evidence demonstrates that Mr. Wich and Ms. Corcoran have nearly equal interests in the property based on their divorce converting their interest from tenants by the entirety to tenants in common. Mr. Wich does not contest that the Florida divorce court assigned him 49.6% ownership and Ms. Corcoran 50.4%. The Court will adopt these percentages for the purpose of the present partition analysis, as there is no dispute that these are the proper percentages to the extent that the Court finds both parties with an ownership interest in the property.

After establishing ownership, the next task is to assign value to each share based on a value of the property and any offsets claimed. In this case, the only credible testimony about that the Property comes from the appraiser, Marco Garcia, who testified and presented an appraisal valuing the Property at $1,100,000.[6] If this value is divided by the parties' ownership percentages, it gives Mr. Wich a value of $545,600 and Ms. Corcoran, $554,400. Against these values the Court finds that Mr. Wich's estate must be reduced by the following offsets attributable to Mr. Wich: (1) $6,676.45 for his portion of the actual amounts paid to resolve the MSC Mortgage; (2) $39,395.29 for his portion of the actual

---

[5] This is consistent with Ms. Corcoran's testimony that the children lived with her 90% of the time after the parties' divorce.

[6] There were some questions about whether the appraisal is out of date given that it is two years old and that property values in Orange County have continued to rise, but the Court finds no credible dispute about the value stated in the appraisal.

amounts paid to resolve the Ledyard National Bank mortgage; (3) $85,000 for his portion of Scott McGee's fees;[7] and (4) $51,608.62 for expenses that Ms. Corcoran has incurred over the last six years.

The Court assigns these values for the following reasons. The first three items represent current or past mortgage obligations that were deemed by the Florida Family Court to be attributable to both parties. As mortgages, these obligations effectively took equity from the parties, and their payment restored the equity. It would be inherently unfair to allow Mr. Wich to enforce his ownership interest while denying Ms. Corcoran the right to recover these equity amounts.

As to the maintenance and reasonable expense costs, Ms. Corcoran is entitled to claims these contribution costs. *Whippie*, 2010 VT 32, ¶ 16. But she is limited by 12 V.S.A. § 511 and may only recover contributions for the six years prior to the present action. See *Fitzgerald v. Congleton*, 155 Vt. 283, 287 (1990) (noting that section 511 "is a catchall statute that applies to civil actions generally").

This balance also strikes an equitable chord in light of the parties' unusual decision to effectively leave the status quo for the property in place for 16 years. During that time, both Mr. Wich and Ms. Corcoran were free to bring a partition action or to codify their understanding into a more detailed agreement. Both chose to leave the situation with some ambiguity. In this respect, the Court will grant the offset/contributions that directly freed up equity in the property as a logical extension of the parties' agreement to put off the present reckoning with ownership. Similarly, the demand for contributions must adhere to the statute of limitations as the parties did not allocate these contributions, and the evidence does not indicate any direct benefit to Mr. Wich from these payments.

Based on the foregoing, the Court will reduce both parties' values by $85,000 to reflect the reduction in equity that the McGee lien represents. This reduces the value of Mr. Wich's interest to $460,600 and Ms. Corcoran's to $469,400. Mr. Wich's interest is further reduced by the other contributions and offsets to **$362,919.64.** Proportionately, Ms. Corcoran's rises to **$567,080.36** to reflect her payment of the MSC and Ledyard mortgages as well as the last six years of reasonable maintenance expenses. The Court finds that these valuations are reasonable. They reflect both the equity that the parties have as a result of their joint ownership as well as a reasonable reduction and credit for payments made by Ms. Corcoran that have preserved the property during her occupancy and

---

[7] The current status of the McGee lien is unclear from the evidence. In 2007, it stood at $170,000, and it was equally assigned to both parties by the Florida Family Court. Mr. Wich makes mention of the McGee mortgage at paragraph 8 of his complaint, but the parties offered little additional information other than to acknowledge its existence. The Court is working on the presumption that the McGee lien remains in place in approximately the same amount.

those payments that have directly increased the parties' equity. These represent the final value of each party's estate for purposes of establishing each party's share of the estate. 12 V.S.A. § 5173.

The next step is to determine whether the property can be divided without great inconvenience to the parties. 12 V.S.A. § 5174. The Court finds, based on the appraisal, there is no convenient way to divide the property as the bulk of the value comes from the improvements. As such, the Court must then assign the property to one of the parties. Id. In this case, the equities favor assigning the property to Ms. Corcoran. She has lived at the property and maintained it for the last 16 years. She has raised horses on the property and has the stronger connection. As such, the Court will assign the property to Ms. Corcoran, conditioned on her ability and willingness to purchase Mr. Wich's interests in the property for the value stated above.

Ms. Corcoran shall have 90 days from the date of this Order to determine if she is willing and able to accept this assignment. During that time, she shall remain at and in control of the property. She shall be responsible for all expenses. If she accepts, Ms. Corcoran shall be responsible for making a timely payment in full to Mr. Wich in exchange for a deed quit claiming his interest in the property to Ms. Corcoran.

If Ms. Corcoran cannot obtain the necessary financing, or if she elects not to pursue the purchase, Mr. Wich shall have 90-days from the expiration of Ms. Corcoran's time or the date of notice from Ms. Corcoran to elect to take the property. During this time, Ms. Corcoran shall remain on the property until closing or until she elects to leave. If Ms. Corcoran remains on the property, she shall be responsible for all expenses, but if she leaves, then she shall notify Mr. Wich, who shall be responsible for the expenses.

If neither party is able to purchase the other party's interest at the end of this 180-day period or if they elect not to purchase the other's interests, then the parties shall notify the Court, and the Court will set a hearing to determine how the property should be sold pursuant to 12 V.S.A. §§ 5175, 5176, which require an order of sale, a determination whether a public or private sale should occur, and the manner in which such a sale should follow.

## **ORDER**

For the foregoing reasons, the Court finds that Plaintiff Craig Wich has a 49.6% ownership interest in the Property as a tenant in common with Defendant Laura Corcoran who has a 50.4%

interest. The Court orders and adjudges that Mr. Wich is entitled to a judgment of Partition pursuant to 12 V.S.A. § 5172.

The Court holds that the value of the Strafford Property is $1,100,000. The value of Mr. Wich's portion of the property is **$362,919.64.** The value of Ms. Corcoran's portion is **$567,080.36.** The Court assigns ownership of the property to Ms. Corcoran pursuant to 12 V.S.A. § 5174. Ms. Corcoran has 90 days from the date of this Order to accept or reject this assignment. If she rejects, then Mr. Wich shall have 90 days to accept or reject the property.

If neither party is able to purchase the other's interests or elects not to purchase, then the parties shall notify the Court, which will set a hearing to determine how a sale of the property shall be conducted in accordance with 12 V.S.A. §§ 5175, 5176.

Electronically signed on 9/26/2025 11:20 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge


Joyce E. McKeeman
Assistant Judge


The Hon Laurel Mackin

Assistant Judge