NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 5

No. 2015-021

| | |
|---|---|
| Karen Wynkoop | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Civil Division |
| | |
| Gerard Stratthaus | June Term, 2015 |

Robert R. Bent, J.

Karen Wynkoop, Pro Se, Rochester, Plaintiff-Appellee.

Zarina Suárez O'Hagin, Hardwick, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.  **DOOLEY, J.**  The parties to this appeal are co-lessees in a thirty-year ground lease for a ten-acre parcel of land owned by Star Meadows Farm, Inc. and located in Walden, Vermont.  The parties constructed improvements on the land and shared the parcel as unmarried cohabitants prior to the events that gave rise to this action.  Upon termination of their relationship, plaintiff Karen Wynkoop sought a declaratory judgment in Caledonia Superior Court to partition the property under 12 V.S.A. § 5161 and compensation for ouster under 12 V.S.A. § 4765.  Defendant Gerard Stratthaus appeals the trial court's property division and compensation to plaintiff.  We reverse in part and affirm in part.

¶ 2.  The following facts generally are not in dispute, unless otherwise noted.  The parties met in 2006, and defendant moved into plaintiff's apartment in 2008.  At that time,

plaintiff was employed as a caretaker for the elderly and owned and operated her own eggroll business, and defendant worked as a dentist for a healthcare provider, where he still is employed.

¶ 3.    In 2008, the parties signed a thirty-year ground lease for a ten-acre parcel with Star Meadow Farm, Inc., a Vermont-certified nonprofit corporation, in Walden, Vermont.[1]  Star Meadow Farm owns 128 acres of land in fee simple and leases parcels to its tenants rent-free. Tenants are responsible for property taxes, liability insurance, utilities, and other expenses, including costs of surveys, land or forest conservation plans, and accounting and legal fees, and must pay to the corporation a $120 land improvement fee.  All tenants become members of the Star Meadow Farm Board of Directors.  Tenants have rights to use and improve the land and the right to sever the improvements upon termination of the lease, but the ground lease specifies restrictions on assigning the lease and selling and assigning the improvements.  Specifically, the lease allows transfer of the leasehold interest or the buildings or improvements to a person approved by the corporation who will enter into a lease on the same terms and will be a director of the corporation.  However, the corporation must be notified of a pending transfer and has the option to buy the buildings and improvements at 80% of fair market value as determined by the town for property taxation purposes.

¶ 4.    After signing the lease, the parties purchased a thirty-two-foot yurt to be constructed on the property.  Before beginning construction, the parties' relationship deteriorated.  Plaintiff subsequently purchased a smaller, twenty-four-foot yurt to provide additional living space.  When the relationship improved, the two moved forward with construction of the larger yurt, but the smaller yurt remained unassembled.  The parties eventually completed the thirty-two-foot yurt and also erected a secondary building they called

---

[1]  The by-laws of Star Meadow Farm, Inc., indicate that the purposes of the corporation are to create and preserve access to land, to form a cooperative community, to refrain from contributing to the escalation of land prices due to speculation and to provide affordable housing to low- and moderate-income people.

the "carriage house." Because of plaintiff's prior construction experience, the parties agreed that she would quit her two jobs and work full time as the general contractor for the construction of the two buildings. Plaintiff planned and coordinated the project and hired additional contractors, plumbers, electricians, and builders for assistance. Although defendant disputes the extent of plaintiff's contribution, the trial court found it substantial.

¶ 5. During this time, defendant supported the parties with his income as a dentist, and plaintiff contributed money from her sale of a previous home. The construction of the two buildings primarily was funded through the parties' joint bank account, plaintiff's checking account, and cash from defendant's safe deposit box. Plaintiff repeatedly requested from defendant a written agreement as to their respective interests in the property, but no official agreement ever was made.

¶ 6. By 2011, the parties' relationship again deteriorated, and plaintiff moved into the carriage house, while defendant remained in the yurt. Plaintiff and other witnesses presented testimony at trial that, during this time, defendant became openly angry and hostile to plaintiff, her guests, and the contractors, such that plaintiff began to fear for her own safety and eventually moved off the property.[2] In August 2012, plaintiff sent defendant a notice to vacate the property. Defendant responded with a notice of trespass preventing plaintiff from reentering the property, asserting that she had abandoned the property and that he had become the sole occupant. He also changed the locks on the yurt to prevent plaintiff's entry.

¶ 7. Plaintiff brought an action in Caledonia Superior Court seeking partition of the property and compensation for her ouster.[3] The trial took three days. Defendant failed to appear

---

[2] Although the evidence demonstrated that plaintiff feared for her safety, the trial court found that defendant never overtly threatened or physically harmed plaintiff or others.

[3] Plaintiff's complaint states several other causes of action, some of which were not raised on appeal to this Court and others that were raised as alternative claims in the event the trial court concluded that judicial partition was not possible.

3

at the third day of trial although his lawyer was present. In its decision, the trial court applied 12 V.S.A. § 5161 in partitioning the leasehold and appointing commissioners to determine a buy-out price or, if necessary, to sell the property and distribute the proceeds. Despite appointing commissioners, the court made many decisions about how to determine the value of each party's interest and decided that plaintiff would have the first opportunity to obtain the property and pay off defendant. The court determined the parties' relative contributions to the project, including plaintiff's "sweat equity"—i.e., her labor as general contractor. The court further found that defendant ousted plaintiff from the property and compensated her for the duration of the ouster. In total, the court estimated the expenses for the project at $145,000 and credited plaintiff with $24,000 in sweat equity, bringing the total to $169,000. Out of this figure, the court credited plaintiff with a 39% share, and defendant with 61%. The court valued much of the personal property and distributed it between the parties.[4] Defendant appealed.

¶ 8. On appeal, defendant raises four claims of error: (1) the leasehold is not real property subject to partition under 12 V.S.A. § 5161; (2) the trial court could not credit plaintiff's sweat equity; (3) the court erred in calculating the parties' contributions to the project; and (4) the court improperly found that defendant ousted plaintiff from the property. We affirm the trial court's judgment with respect to the applicability of the partition statute to the leasehold, the credit for plaintiff's sweat equity, and the ouster. We reverse and remand for the court to correct errors in its calculation of the parties' respective contributions and to value the property and determine the partition remedy.

---

[4] The parties stipulated to the ownership of many of these items, and the court distributed the remaining items equitably. Although defendant argues in his brief to this Court that the trial court had no authority to distribute property not held jointly by the parties, he did not object to the court's distribution below and therefore has not preserved this issue for appeal.

4

¶ 9.    The threshold issue presented in this case is whether 12 V.S.A. § 5161 applies to allow partition of the property interests of plaintiff and defendant.  As we hold infra ¶ 19, we view the consequence of the answer to this question somewhat differently from the trial court and the parties but agree that the question should be answered.  We answer the question in the affirmative.  12 V.S.A. § 5161 provides: "A person having or holding real estate with others, as joint tenants, tenants in common or coparceners, may have partition thereof."  The trial court held that the real estate interest present here, a tenancy under a thirty-year lease, comes within the statute, drawing upon an Ohio decision[5] and a decision from this Court.[6] We agree with defendant that neither of these decisions support the trial court's conclusion and that the wording of the statute requiring "having or holding real estate" and "joint tenants, tenants in common or coparceners"[7] does not appear on the surface to be consistent with the trial court holding.  The interpretation of § 5161 is an issue of law, which we review de novo.  In re T.S.S., 2015 VT 55, ¶ 15, ___ Vt. ___, 121 A.3d 1184.

¶ 10.    Partition is defined as "[t]he act of dividing; esp., the division of real property held jointly or in common by two or more persons into individually owned interests."  Black's Law Dictionary 1151 (8th ed. 2004) (emphasis added). Section 5161 provides for partition among holders of concurrent interests in "real estate."  12 V.S.A. § 5161.  Broadly, property falls within two classifications: real and personal (chattel).  Real property pertains to "[l]and and

---

[5]  Brown v. Rawson, 31 Ohio Dec. 447, 1920 WL 593 (C. P. 1920), concerns the ability of a fee owner to partition real property subject to a leasehold and in possession of the lessee.  As the court stated, "[t]he existence of an ordinary lease for years, under which the tenant is in possession, paying rent to the owners of the fee, is no obstacle to partition among such owners." Id. at *3.

[6]  Stanley v. Stanley, 2007 VT 44, 181 Vt. 527, 928 A.2d 1194, concerns the partition of a wooded parcel subject to a perpetual lease.  The trial court never reached the merits of the partition action, and it was not raised on appeal to this Court. Id. ¶¶ 6, 15.

[7]  Black's Law Dictionary 359 (8th ed. 2004) defines a "coparcener" as a "person to whom an estate descends jointly, and who holds it as an entire estate" or a "person who has become a current owner as a result of descent."  The parties are not coparceners.

anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land," Black's Law Dictionary, supra at 1254, while personal property encompasses "[a]ny movable or intangible thing that is subject to ownership not classified as real property," id. A leasehold, however, "has historically been classified as a chattel real," id. at 909-10, which is a "real-property interest that is less than a freehold or fee," id. at 251. A leasehold estate that is for a term of years is considered a chattel "because it lacks the indefiniteness of time essential to real property." Id. Commentators have noted that an estate for years "never fully attained the historical dignity of being 'real property.' " 1 R. Powell, Powell on Real Property § 5.04 (1998).

¶ 11. Other courts have recognized this hybrid nature of a leasehold—falling somewhere between real and personal property—and have concluded that it is subject to the rules governing personal property. See, e.g., In re Marino, 813 F.2d 1562, 1566 (9th Cir. 1987) (noting that leasehold is "personal property under California law"); D.C. v. 17M Assocs., LLC, 98 A.3d 954, 961 (D.C. 2014) ("There can be no question under the common law in force in this District that a leasehold interest in lands is personal property." (quotation and internal alteration omitted)). Consistent with this view, courts have allowed the partition of leaseholds under statutes that expressly provide for partition of personal property, see, e.g., Wilson v. Prentiss, 140 P.3d 288, 290-91 (Colo. App. 2006) (noting statute allows partition of real and personal property), or, in the absence of express statutory language, under the broad equitable powers of the court, see, e.g., Sims v. Sims, 1996-NMSC-078, ¶ 38, 930 P.2d 153 (stating plain language of "Partition Act" does not abrogate court's equitable powers).

¶ 12. Our statutory scheme is entitled "Partition of Real Estate." 12 V.S.A. Ch. 179. Real estate is defined in the definition section of Vermont's statutes as "lands, tenements, and hereditaments and all rights thereto and interests therein." 1 V.S.A. § 132; see In re Burlington Airport Permit, 2014 VT 72, ¶ 21, 197 Vt. 203, 103 A.3d 153 ("[A] word used throughout an act

6

or statutes in pari materia bears the same meaning throughout, unless it is obvious that another meaning was intended." (internal alteration and quotation omitted)). This terminology can be traced back to the 1797 partition act, entitled "An act, for the partition of real estate, in certain cases," which provided a partition action for "any person or persons, having or holding, or who may hereafter have or hold any lands, tenements or hereditaments, with others, as joint tenants, tenants in common, or coparceners." Laws of the State of Vermont, 1808, ch. XI § 1. Another section of that law suggests a broad meaning of "lands, tenements or hereditaments." Section 11 provides: "all gifts, grants, feoffments, devises and other conveyances of any lands, tenements and hereditaments, which . . . shall be made, to two or more persons, whether for years, for life, in tail, or in fee, shall be taken, deemed and adjudged to be estates in common, and not in joint tenancy." Id. § 11 (emphasis added). The language of that section is now contained in 27 V.S.A. § 2(a). As this language suggests, the phrase "lands, tenements and hereditaments" is not restricted merely to freehold estates. It is reasonable to conclude that the phrase bears the same meaning in § 1 of the 1808 act as in § 11. See In re Burlington Airport Permit, 2014 VT 72, ¶ 21.

¶ 13.   The construction of the statute that "real estate" includes a tenancy for years is also consistent with the evolution of the English statute on which the Vermont partition statute is based. Other courts have recognized this history and concluded that their own partition statutes, having been modeled on the English antecedents, should be read broadly so as to extend to leaseholds. See, e.g., Pierce v. Pierce, 123 N.E.2d 511, 512-13 (Ill. 1954); Sims, 1996 -NMSC-078, ¶¶ 15, 20.

¶ 14.   Our early case law also supports this broad reading. In Munroe v. Walbridge, 2 Aik. 410, 1827 WL 1403, we considered the right of mortgagees to partition their undivided interests. In disclaiming the cases restricting the scope of a partition action, we held that it is "no improper construction of our statute, to consider it broad enough to comprise all the cases in

7

which a partition is allowed at common law, and by virtue of the English statutes." Id. at 412, 1827 WL 1403 at *2.

¶ 15. The reliance on the history forms the rationale for Pierce, the leading case in the area. The wording of the Illinois statute is similar to that of the Vermont statute when the statutory definition of real estate is included. Id. at 512. As in this case, the opponent to partition argued that the statute allowed partition only of real estate held in fee. The Court noted that prior to 1539, partition in England was available only for coparceners, that is, persons who had become concurrent owners through inheritance and held a fee interest. In 1539, by virtue of statute, partition was extended to all joint tenants and tenants in common having "any estate or estates of inheritance in their own right, or in the right of their wives, or any manors, lands, tenements, or hereditaments." Id. (quoting 31 Henry VIII, c.1). The following year, the statute was amended extend the remedy to

> all joint-tenants and tenants in common, and every of them, which
> now hold or hereafter shall hold jointly or in common for term of
> life, year or years, or joint-tenants or tenants in common, where
> some of them shall have estate or estates for term of life or years,
> with other that have or shall have estate or estates of inheritance of
> freehold in any manors, lands, tenements, or hereditaments.

Id. at 513 (emphasis added) (quoting 32 Henry VIII, c.32). All, or virtually all, decisions that have considered the question before us have held that partition is available for leasehold interests. See Baldwin v. Baldwin, 516 So.2d 560, 561-62 (Ala. 1987); Chiang v. Chang, 529 N.Y.S.2d 294, 295 (App. Div. 1988); Sims, 1996—NMSC—078, ¶ 51; Black v. Sylvania Prod. Co., 137 N.E. 904, 904 (Ohio 1922); Amerada Pet. Co. v. Cheesman, 223 S.W.2d 74, 76 (Tex. Civ. App. 1949). Based on our own analysis, as well as the precedents from other jurisdictions, we hold that plaintiff could seek partition under 12 V.S.A. § 5161.

¶ 16. As we stated at the outset of this discussion, we have a different view from the parties and the trial court of the significance of this holding. Defendant has raised this issue on

the apparent belief that if the statutory partition scheme did not apply to leasehold estates plaintiff would be left without a remedy for dividing the joint assets of the parties leaving their distribution where they currently lie. This would be a manifestly unfair and unjust result and would reward possession alone however that possession was accomplished. It would leave defendant unjustly enriched without a remedy. Moreover, it would leave plaintiff, who has a recognized interest in the property involved by virtue of the lease, in a worse position than if she had no interest in the property at law.

¶ 17. There is, however, an alternative remedy applicable to the situation in which plaintiff is left. Partition is both an action at law, pursuant to the statute, and a remedy in equity that came to us as part of the English legal system.[8] The effect of the dual coverage of the subject was explained in Geis v. Vallazza, 124 Vt. 457, 460-61, 207 A.2d 248, 251-52 (1965):

> In this State, as in England, the statutory remedy of partition by courts of law is cumulative and concurrent with the original jurisdiction of courts of equity in partition proceedings. . . . The statutory remedy of partition is generally held to be cumulative and not to supercede original jurisdiction in equity. . . . Where equity has concurrent jurisdiction, it has been held that it will exercise the same in its own established principles, and with the use of its own better-adopted and more flexible modes of procedure.

(citations omitted). In the earlier case of Fiske v. Probst, 121 Vt. 93, 147 A.2d 680 (1959), the appellant alleged that the commissioners in a partition action failed to comply with the statutory mandate that the shares of the property be set out by metes and bounds. We noted that the case had been transferred to equity where the court "exercises its jurisdiction on its own established principles, and by its more flexible modes of procedure." Id. at 97, 147 A.2d at 682. Since the

---

[8] Our decisions have occasionally referred to partition as an equitable remedy and then cited the statute. See, e.g., Begin v. Benoit, 2006 VT 130, ¶ 6, 181 Vt. 553, 915 A.2d 786. As the text notes, this description is in error. The equitable action of partition is different from the action of partition at law, reflected in the statute. The confusion is understandable because the statute provides a procedural structure for the action at law but little regulation of the scope and detail of the partition remedy, and the trial courts have frequently followed the statute, even in equitable partition actions, a practice we authorized in Geis as creating no error. 124 Vt. at 461-62, 207 A.2d at 252.

description of the shares was sufficient to pass title under the decree, compliance with the statute was unnecessary. Id. In Geis, the appellant claimed that the chancellor of the court of equity had no power to order a sale of the property. We held that the chancellor had the inherent power to order a sale where a physical division of the property was possible and neither of the co-owners would take the entire property subject to paying the other co-owner for the co-owner's interest. Geis, 124 Vt. at 461, 207 A.2d at 252.

¶ 18. Both Fiske and Geis were decided before the merger of law and equity, and, therefore, the procedure was governed by whether the case was filed in the county court or in the court of equity in the same location but where the presiding judge acted as the chancellor. The merger vested the chancellor's powers in the presiding judge of the county court and the jurisdiction of the equity court in the county court. See 4 V.S.A. § 219; Kelly v. Alpstetten, 130 Vt. 443, 444-45, 296 A.2d 232, 233 (1972). There is now just one form of action. V.R.C.P. 2. The question of whether a partition action is an action at law governed by the statutes or an action in equity must be answered based on the nature of the remedy sought and the jurisdictional principal that equity cannot act if there is an adequate remedy at law. See In re C.B., 147 Vt. 378, 380-81, 518 A.2d 366, 369 (1986); see also Chaney v. Upchurch, 603 S.E.2d 255, 256 (Ga. 2004) (equitable partition available where statutory remedy at law is inadequate). To be adequate the legal remedy must be able to provide complete relief for the case before the court and must be equally convenient, beneficial, and effective. In re C.B., 147 Vt. at 381, 518 A.2d at 369.

¶ 19. Recognizing the similar evolution in New Mexico, the Supreme Court of that state addressed the issue of whether a court could partition a leasehold interest under the court's equitable powers, drawing on decisions from around the country:

> Public policy supports our conclusion that leaseholds may be equitably partitioned under New Mexico law. . . . Partition is a remedy said to be much favored in the law.

10

Judicial intervention is sought because there has been a breakdown in the relationships between those who share possession of property. The parties can no longer cooperatively and peacefully enjoy their rights in that property. The purpose of partition is to create a way for the parties to avoid the inconvenience and dissension caused by the inharmonious joint possession of the property. Furthermore, partition "is based upon the principle that no one can be compelled to hold property with another, and it is available to anyone who does hold property in common with another." Partition secures peace, promotes the enjoyment of property, and advances industry and enterprise.

Linked to the equitable powers of the court is the general principle that at common law any type of property may be partitioned. Because partition is looked upon with such favor, this common-law equitable remedy can be applied to any property capable of being held in cotenancy. At common law every class of property, including personal property, may be subject to partition.

Leaseholds are no exception to the common-law rule that all types of property may be partitioned. There are many cases from many jurisdictions on this point.

Sims, 1996—NMSC—078, ¶¶ 45-48. Based on our own analysis of the law both within Vermont and without, we agree with the analysis in Sims.

¶ 20. Recent history elucidates the need for the flexible remedies in equity to meet modern and more complex circumstances. See Frame v. Frame, 740 P.2d 655, 658 (Mont. 1987) (In equitable partition, the court "has great flexibility in fashioning appropriate relief for the parties . . . [t]he fundamental objective in a partition action is to divide the property so as to be fair and equitable and confer no unfair advantage on any of the cotenants" (citation omitted)). We now have a substantial line of partition cases involving property owned by unmarried partners in a marriage-like relationship. Indeed, in recent years all partition cases that have reached this Court have involved such circumstances. See Begin v. Benoit, 2006 VT 130, 181 Vt. 553, 915 A.2d 786; Massey v. Hrostek, 2009 VT 70, 186 Vt. 211, 980 A.2d 768, overruled on separate grounds by Whippie v. O'Connor [Whippie II], 2011 VT 97, 190 Vt. 600, 30 A.3d 1292; Whippie v. O'Connor [Whippie I], 2010 VT 32, 187 Vt. 523, 996 A.2d 1154; Nystrom v.

11

Hafford, 2012 VT 60, 192 Vt. 300, 59 A.3d 736; Currie v. Jane, 2014 VT 106, 197 Vt. 599, 109 A.3d 876. As the law has developed in this area, it is clear—although we have never stated it explicitly—that we are deciding the cases based on equitable principles and endorsing the use of flexible procedures derived from equity even though they may not fully comply with the statutes. Thus, we said in Begin:

> [P]artition actions are equitable in nature, and . . . in such actions, " 'courts should consider all relevant circumstances to ensure that complete justice is done.' " (quoting Wilk v. Wilk, 173 Vt. 343, 346, 795 A.2d 1191, 1194 (2002)). Thus, we find that while plaintiff was entitled to partition under 12 V.S.A. § 5161 only upon acquiring a joint tenancy in the property, once she brought the partition action, the court was within its right to consider her prior financial participation to the property in an effort to equitably divide the parties' interests.

2006 VT 130, ¶ 6. Similar statements appear in the other cases. See, e.g., Massey, 2009 VT 70, ¶¶ 22-23.

¶ 21. In applying partition then, we have relied on equitable partition and not the action at law known as statutory partition. While there may be multiple reasons for proceeding this way in particular cases, the overall rationale applicable to property division for unmarried partners in marriage-like relationships is that we must consider all relevant circumstances to ensure that complete justice is done as we stated in Begin. Thus, even if § 5161 did not apply because the parties have a leasehold interest and not ownership in fee, we would hold that partition in equity is the proper remedy.

¶ 22. This case is a good example of why we reach that conclusion based on the need for flexibility and affordable adjudication. Because of the interests of the Star Meadow Farm, and the lease provisions that come from that interest, it will be challenging in this case to achieve a fair and workable result for the parties at law, therefore allowing us to apply the flexibility of

12

equitable remedies.[9]  Neither party seeks actual partition of the leased property under 12 V.S.A. § 5169.  As an alternative, the statutes allow assignment of the lease to one of the parties "provided he pays to the other party such sum of money, at such times and in such manner as the commissioners judge equitable."  Id. § 5174.  This is the remedy the trial court proposed, choosing plaintiff as the recipient of the property with a pay-off to defendant, but the trial judge did much of the work of the commissioners referenced in the statute.

¶ 23.   The commissioners are "three disinterested residents of the county," Id. § 5169, who must be paid by the parties for their services.  Id. § 5181.  In this case, as well as in most of our partition cases involving unmarried couples, the parties have limited financial means strained by the separation of their households.  In addition, the property interest being partitioned is a form of affordable housing.  Even if recourse to commissioners was a desirable option for adjudication, it represents an expensive addition to the already burdensome cost of litigation.

¶ 24.    The cost of commissioners is exacerbated by the nature of the adjudication in a case like this.  Unlike the paradigm partition action that underlies the partition statute, the form of which goes back to the eighteenth century, this adjudication must consider equitable principles in crafting a fair remedy between the parties, while avoiding unjustly enriching either party.  In doing so, the trial court should apply the principles set forth in Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (2011), which specifically addresses the application of unjust enrichment principles in the context of property distribution of unmarried cohabitants.  It provides:

> If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions

_____

[9]  It goes without saying that the passage of time complicates the ability to achieve a just result.  The parties separated in 2011.  The trial commenced in February of 2014, but the final day of trial did not occur until September of 2014.  The trial court decision was issued in January of 2015.

in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

Consistent with this principle, some of the considerations that underlie our statutes governing equitable division in divorce apply here, even though the cohabitants are unmarried. The coverage of the Restatement as applying to services as well as property is important to the next issue raised by defendant. We have referred to it in the past and adopt it here. See Shattuck v. Peck, 2013 VT 1, ¶¶ 13 (majority), 33-34 (dissent), 193 Vt. 123, 70 A.3d 922.

¶ 25. Under these circumstances, if the basic adjudication is to be done by commissioners, they must have the skill and experience of a chancellor in equity adding to the cost and moving far from the expectation that a commissioner is simply a disinterested citizen. Under the circumstances, it is understandable why in almost all our prior partition cases involving unmarried persons who lived together in a marriage-like relationship the court dispensed with the use of commissioners. [10]

¶ 26. In summary, we hold that this case is appropriately an equitable partition case to be adjudicated under the equitable principles and procedures of a normal civil case. The superior court has jurisdiction over this case based on the common leasehold interest of the parties. As explained infra the superior court should proceed to fashion a remedy without use of commissioners except, if necessary, for purposes of sale of the property.

¶ 27. Because we agree that the leasehold interests are subject to partition, we next address defendant's other argument that plaintiff should not get credit, in determining the property value she should receive, for her "sweat equity" as ordered by the trial court. The trial court valued the costs of the improvements to the land as including $24,000 in "sweat equity"

_____

[10] We note that in only one of our recent partition cases involving unmarried cohabitants were commissioners appointed. See Massey, 2009 VT 70, ¶ 5.

expended by plaintiff in serving as general contractor for the property after she gave up her eggroll business.

¶ 28. We recognize that the facts in this case are unusual because the leasehold interest in the land was acquired at no cost and are difficult to value, particularly because the corporation has a right of first refusal under the lease contract to purchase at 80% of fair market value as determined by the town for property tax purposes. Further, any transfer of the leasehold or improvements to a third party must be approved by the corporation. The trial court found that the value was in the improvements—primarily the two buildings, the yurt, and the carriage house—and there was no objection to that finding. Thus, the valuation is governed by the rule announced in Massey v. Hrostek, 2009 VT 70, ¶¶ 23-24 that a cotenant may be compensated for improvements made to the property. The general rule is that cotenants who pay for discretionary improvements are entitled to a credit for the resultant increase in fair market value, not for the actual costs. Id. ¶ 24. The rationale behind this principle is that improvements may not enhance the value of the property in proportion to the amount of the contribution, if at all. See id. ¶ 23. We have recognized an exception, however, for contributions to improvements that were made under an agreement between cotenants or by the consent of the other cotenants, and we therefore have allowed credit for the cost of those improvements. Id. ¶ 23. Here, the parties endeavored to construct the yurt and carriage house as a couple—they agreed to the construction of the improvements and are therefore entitled to a credit for the cost of their respective contributions. The question then is whether "sweat equity" in the form of service as a general contractor may be considered a contribution.

¶ 29. We conclude that the trial court acted within its discretion in crediting plaintiff for sweat equity. While we have never directly addressed the question, other courts have and have reached this result. See, e.g., Sanborn v. Johns, 477 N.E.2d 196, 199 (Mass. App. Ct. 1985) (affirming judgment of trial court in crediting defendant's labor in improvement property

15

because doing so "was just"); Indra v. Wiggins, 28 N.W.2d 485, 486-87, 489 (Iowa 1947) (affirming judgment of trial court in crediting defendant's labor in improving property); Byrne v. Byrne, 233 S.W. 461, 463, 465 (Mo. 1921) (affirming judgment of trial court in crediting defendant's labor in reconstructing, enlarging, and remodeling buildings). We can find no case in which a court has rejected sweat equity contributions. These decisions are consistent with our holdings that the trial court has broad discretion in fashioning an equitable remedy. See Massey, 2009 VT 70, ¶ 21. Moreover, we have allowed a party to recover the costs of physical labor in construction of the family home in a divorce. See Mizzi v. Mizzi, 2005 VT 120, ¶ 7, 179 Vt. 555, 889 A.2d 753. The Restatement specifically allows recovery of "services" that are not purely domestic. Restatement (Third) of Restitution and Unjust Enrichment § 28(1), comment d.

¶ 30. Defendant has also challenged the dollar amount of the expense credited to plaintiff for her services. In assessing this challenge, we will "uphold the trial court's findings as long as they are supported by any credible evidence on the record." Currie, 2014 VT 106, ¶ 19 (quotation omitted). "[W]e review the trial court's exercise of discretion in applying the equitable remedy of partition for abuse of discretion," id., but this discretion "does not excuse the court from making the concrete mathematical calculations that are possible under these facts." Massey, 2009 VT 70, ¶ 26. We find that the trial court's "sweat equity" calculation is supported by the record evidence. To reach its award of $24,000, the court first looked to plaintiff's log accounting her hours spent on the project, finding that she worked a total of 1300 hours on the project. The court then considered plaintiff's valuation of $30 per hour for her labor as general contractor. The court looked to the amount billed by two other contractors on the project to determine that plaintiff is entitled to $30 for 550 hours and $10 an hour for 750 hours. We find no error.

¶ 31. We turn to the trial court's calculation of each party's contributions beyond the issue of the sweat equity. Defendant claims that the court erred in excluding certain amounts in

16

its final calculation of the parties' contributions, omitting the cost of the larger yurt from its calculation, calculating the relative contributions from plaintiff's bank account, finding that defendant never repaid plaintiff for a loan, and crediting plaintiff for improvements to the carriage house. We conclude that the court erred in excluding certain amounts from its final calculation and omitting the cost of the large yurt from its calculation. We find no error on the other points.

¶ 32. First, defendant claims the court erred in tabulating the monetary contributions made by each party toward purchasing and constructing the yurt and carriage house. While we find no error in the initial accounting figures and the determination of the parties' respective contributions, we conclude that the court made arithmetic errors in its final calculations and also failed to account for the purchase of the thirty-two-foot yurt kit.

¶ 33. The court started by determining that the cost of the improvements was $145,000, rounded up from $144, 890. Of that figure, $83,800 came from plaintiff's bank account but was funded by defendant, $34,354 from the parties' joint bank account, $4736 from defendant's bank account for payment to one of the contractors, and $22,000 from defendant's safe deposit box for the cost of the twenty-two-foot yurt kit.[11] Based upon her contribution to the above expenditures, including a $3900 payment to a contractor and an $11,362 deposit on the yurt, the court credited plaintiff with $34,000. The court identified the value of defendant's contribution as $95,270. That figure represents $22,000 for the yurt balance, $4736 for contractors, and $83,800 for construction expenses—which came from plaintiff's bank account, less the $3,900 and $11,362 payments made by plaintiff.

¶ 34. However, in calculating these contributions, the court made two errors. First, the court's calculation of defendant's contribution did not include the $34,354 taken from the joint

---

[11] The court assumed the $22,000 came from the safe deposit box because there was no record of the payment from any of the bank accounts and there was a record of a withdrawal from the safe deposit box a few days after the parties received the invoice for the yurt kits.

bank account. Although the account is described as joint, the money in it was provided by defendant. This error, in turn, led to individual expenditure calculations of $95,270 for defendant and $34,000 for plaintiff that combined are lower than the total expenditure calculation of $145,000. The court tried to fix this error, in part by finding a $16,000 "shortfall." To account for this discrepancy, the court split the $16,000 and credited each party with an additional $8,000. Because of these errors, the court ultimately concluded that the parties' contributions were $103,000 for defendant and $42,000 for plaintiff, rather than $111,000 and $34,000. Second, despite accounting for the twenty-two-foot yurt, the court made no findings as to the source of funds for the thirty-two-foot yurt—the one actually constructed—and consequently did not factor its construction and material costs into the parties' final expenditures.

¶ 35. Defendant next claims that the trial court erred in calculating the relative contributions from plaintiff's bank account. Specifically, defendant argues that the court should not have credited all the money attributed to plaintiff in this account as going toward the project. We note that the exact account here was hard to pin down: the parties had multiple bank accounts and the safe deposit box, and both parties had money going in and out of the accounts. To determine the relative contributions, the court relied on two charts admitted into evidence and stipulated to by both parties. The court inferred from this evidence that all the money going into the accounts from plaintiff, who was no longer employed and was working full time on the construction project, was going straight to the project. The court also inferred that because defendant was employed full time, and his income was the parties' main financial support, that not all of his money was going into the project.

¶ 36. The disputes over the sources and uses of the money first came to a head in the court's exclusion from evidence of an exhibit prepared by defendant's attorney that summarized all contributions from the parties' checking accounts. Defendant argues here that the court's findings and calculations conflict with those presented in this summary and the summary should

have been admitted into evidence. He relies on Vermont Rule of Evidence 1006, which states that the "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The court did not rule that defendant's exhibit was of a type of document inadmissible under Rule 1006; instead, it refused to admit the exhibit because it was prepared by defendant's attorney and no foundation for the document was provided by defendant.

¶ 37. We find no error in that ruling. The rule contemplates that a foundation for introduction summaries be laid by a witness who prepared or supervised preparation of the exhibit. U.S. v. Behrens, 689 F.2d 154, 161 (10th Cir. 1982) (admitting summary evidence under Federal Rule of Evidence 1006 where authenticity of summary was adequately established); see also State v. Scott, 2013 VT 103, ¶ 9, 195 Vt. 330, 88 A.3d 1173 (observing that Vermont Rules of Evidence are nearly identical to their federal counterpart). Defendant did not supervise the preparation of the exhibit; it was prepared by his attorney. Defendant could not provide a foundation for the exhibit because he failed to appear at the trial. Defendant's counsel attempted to lay a foundation by questioning plaintiff on each entry in the summary, but much of plaintiff's testimony was vague. To the extent that the document did nothing more than summarize evidence that had been admitted by the court, nothing prevented counsel from submitting the chart to the court as argument, in the context of, for example, a trial memorandum. However, that is different from admitting the document as substantive evidence. It was well within the discretion of the trial court to exclude this document for lack of proper foundation, Griffis v. Cedar Hill Health Care Corp., 2008 VT 125, ¶ 18, 185 Vt. 74, 967 A.2d 1141 (stating that trial court's decision to exclude evidence is "highly discretionary"), and we therefore find no error.

¶ 38. Defendant also claims the court erred by not crediting him for paying plaintiff back the $9000 she paid for the services of a well driller. While the court found that there was

an issue as to whether defendant repaid plaintiff, it found no evidence to conclude that he actually did. Counsel for defendant cross-examined plaintiff on a series of checks that may have been the repayment. Plaintiff testified that these checks were for "services rendered" but could not be more specific about such services. Again, defendant could have provided the necessary testimony but failed to appear at the trial. On this record, the court could find it unlikely that defendant repaid the loan. We therefore find no error.

¶ 39. Defendant's final claim regarding the trial court's accounting is that the court erred in crediting plaintiff with $3900 for improvements to the carriage house because those improvements were not complete at the time of trial. Defendant's emphasizes that these improvements did not increase the value of the property and therefore cannot be credited in the partition action. This argument fails because the court credited the parties based upon the costs of improvements and not upon the increase in fair market value as a result of those improvements. As discussed above, supra, ¶ 22, it was proper for the court to consider the cost of improvements because both parties consented to the improvements See Nystrom, 2012 VT 60, ¶ 16 (court can consider the expense of siding purchased to go on the house where it was "on site"). This was not in error.

¶ 40. Finally, defendant claims the court erred in finding that he ousted plaintiff from the property. "The general presumption against ouster of a co-tenant can be overcome only by some overt and notorious act or acts or an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant." Whippie I, 2010 VT 32, ¶ 19 (quotation omitted). We have held that such actions constitute ouster as changing locks and security codes, Massey, 2009 VT 70, ¶ 24, and sending a no-trespass letter, Whippie II, 2011 VT 97, ¶ 10. Here, defendant locked plaintiff out of the yurt and sent her a notice of trespass upon her reentry on the property. Either action would have constituted an ouster under our precedent.

20

¶ 41.    Defendant does not contest these facts but argues that plaintiff should be estopped from asserting ouster because she ordered defendant to vacate the property prior to his no-trespass order and the ouster here was not wrongful because he was trying to protect his personal belongings.  Defendant is correct that the court must determine that the ouster was wrongful before compensating plaintiff for the period of her exclusion.  Whippie I, 2010 VT 32, ¶ 1.  We disagree, however, that the court failed to make findings to this point.  The court found that defendant's behavior had become volatile; that he acted overtly hostile toward plaintiff, her guests, and the contractors working on the property; and that plaintiff legitimately feared for her safety.  These findings are supported by evidence on the record in the form of testimony from plaintiff and the contractors.  Specifically, plaintiff testified that she left the property because she felt threatened by defendant.  We therefore conclude that the trial court did not err in finding that defendant ousted plaintiff from the property and crediting her with an offset for half the rental value while she was ousted.

¶ 42.    Because of the failure to account for the cost of the yurt that was constructed on the property as well as the calculation error, we must remand this case to redetermine the share of the property to be attributed to each party.  We take this opportunity to describe the options for the trial court in conducting the remand.  We stress at the outset that any partition remedy extends only for the duration of the lease and does not bind either the corporation or any subsequent tenants.  Although an equitable partition action is not constrained by the statutory remedies, the statute does lay out three remedies that may also apply in equitable partition: (1) physical division of the land—i.e., partition in-kind; (2) the assignment of the interest of one cotenant to the other for a predetermined pay-off; or (3) partition by sale, with the cotenants sharing the proceeds according to a predetermined formula.  12 V.S.A. §§ 5174-5175.  Partition in-kind is favored, but where the property "cannot be divided without great inconvenience to the parties," assignment may be ordered.  Id. § 5174.  Partition by sale generally is available only

21

where the first two methods are impractical.  Id. § 5175; Geis v. Vallazza, 124 Vt. 457, 461, 207 A.2d 248, 252 (1965).  The trial court concluded that the property here could not be divided physically.  As a result, the court ordered assignment of defendant's interest to plaintiff, a determination "based on her age, devotion to the project, and greater apparent economic need for housing."  See Nystrom, 2012 VT 60, ¶ 8 (noting that trial court found "equities tipped in favor of [plaintiff's] request for occupancy" because of, among other things, her "sweat equity in the construction project", devotion of her family to project, and proximity of property to her family).  Defendant has not appealed the assignment.  The court further ordered that if neither party wishes to remain on the property, it will be sold, and the sale amount distributed according to the parties' percentage ownership interests.

¶ 43.  In order to determine a buy-out price for plaintiff, the court ordered that commissioners be appointed to determine the value of the property as specified in the partition statute.  As we have held above, equitable partition can follow its own flexible procedures, and the court is not bound by those in the statute, including the use of commissioners.  We conclude that appointment of commissioners is particularly inappropriate and unnecessary in a case like this because they add cost to the process, the value of the property is relatively small, and the role of the commissioners is very limited.  Thus, we conclude that in this case the trial court should value the property and not refer valuation to commissioners.  Once the court has valued the property, it should determine and order the partition remedy, either by assigning the property to plaintiff with a pay-off to defendant or sale of the property with distribution of the proceeds according to the percentage shares of the parties.  If a sale is ordered, the court may appoint commissioners to sell the property.

¶ 44.  In order to value the property, the trial court may have to admit further evidence.  We leave that to the trial court's discretion to determine whether additional evidence is necessary.  We stress, however, that any additional evidence should be related only to the value

22

of the property. The lack of evidence in this case resulted from, in significant part, the failure of defendant to attend the last day of trial and provide evidence that he was in the best position to provide. It would be inappropriate to allow him a second opportunity to provide that evidence.

The judgment of the Caledonia Superior Court is affirmed with respect to the determination that partition of the leasehold is authorized by law, that plaintiff should receive credit in determining her share of the value of the property for her services as general contractor of the joint construction project, and that plaintiff was ousted by defendant from the property. The judgment is reversed and remanded for the court to correct errors in its final calculation of the percentage share of the value of the property held by each party consistent with this opinion and is remanded for the court to determine the value of the property and the appropriate partition remedy.

FOR THE COURT:

_____
Associate Justice

¶ 45.   **EATON, J., concurring.**   I concur with the outcome reached by the majority, and agree with its analysis of the issues, except as to the applicability of 12 V.S.A. § 5161. Despite its lengthy analysis of statutory partition, the majority appears to rely upon equitable, not statutory, partition to support the trial court's decision to partition the leasehold interest of the parties. I agree that equitable partition is available and appropriate under the circumstances of this case. Because the majority relies upon equitable partition, the historical overview of statutory partition is largely unnecessary to the result. I am also not convinced that statutory partition is available in this case, and to the extent the majority holds that statutory partition provided any authority for the court to partition the leasehold interest, I disagree.

¶ 46.   Our partition statute provides: "A person having or holding real estate with others, as joint tenants, tenants in common or coparceners, may have partition thereof." 12 V.S.A. § 5161. I do not necessarily agree that a thirty year ground lease is an interest which constitutes "having or holding real estate."

23

¶ 47.    Because the statute provides for partition only for those having or holding an interest in real estate, other interests do not fall under the statute.  That some courts have decided partition is available for leasehold interests begs the question of whether a leasehold interest is an interest in real estate, a personal property interest, or a hybrid interest of some kind, the classification of which impacts the applicability of the statute.  Our partition statute does not apply to personal property or hybrid interests, nor does it expressly apply to leaseholds.  Some state statutes make partition expressly available to interests in real or personal property.  See, e.g., Colo. Rev. Stat. Ann. § 38-28-101.   Although certainly the Legislature could have specifically included leaseholds, or, more generally, personal property, within the property interests for which statutory partition is available, it has not done so.  Thus, cases holding that a leasehold is either a personal property interest or a hybrid interest between personal and real property, even if those decisions allow for partition, lend no support to an action for partition based upon our partition statute, which is confined to those persons having or holding interests in real property.

¶ 48.    Several courts have held that a lease is a species of personal property.  See In re Marino, 813 F.2d 1562, 1566 (9th Cir. 1987) (finding a fifty-year lease on lands where apartments were built to be personal property under California law); Fleet Nat. Bank v. Raleigh Oaks Joint Venture, 451 S.E. 2d 325, 328 (N.C. 1994) ("[A] lease is a species of personal property" (citation and alteration omitted)); Swayze v. Bartlett, 273 P.2d 367, 372 (N.M. 1954) ("So far as the state lease in question is concerned, it is a chattel and not real property."); Mulloy v. Kyle, 41 N.W. 1117, 1118 (Neb. 1889) ("[A] lease for a term of years is chattel or personal property.").  Others, as the majority notes, have recognized a lease as a hybrid, falling in between real and personal property interests.  See 17M Assocs, LLC, 98 A.3d at 961 ("[A] lessee's possessory interest, although an interest in real property, is ultimately a species of personal property." (emphasis in original)); Wilson v. Prentiss, 140 P.3d 288, 290-91 (Colo. 2006)

24

(finding partition of leasehold interest in divorce proceeding appropriate where statute allowed for partition or real and personal property).

¶ 49.     The majority delves into 500 years of history to conclude that leasehold interests under Vermont law are an interest in real property, or sufficiently akin to one, to enable partition under 12 V.S.A. § 5161, et seq.   In support of this conclusion, the majority relies on several decisions which have allowed for partition of leasehold interests, a broader question than whether partition is authorized under 12 V.S.A. § 5161.   In my view, these parties, through this leasehold arrangement, did not have or hold an interest in real property, and therefore were not entitled to partition under the statute.

¶ 50.     Simply because statutory partition was not available does not mean that partition was inappropriate here.   Equitable remedies are available when there is not an adequate remedy at law on the very subject in question.   Poulin v. Town of Danville, 128 Vt. 161, 166, 260 A.2d 208, 211 (1969) ("Equity will afford relief unless there is a plain, adequate and complete remedy at law").

¶ 51.     I agree with the majority's conclusion that equitable partition, in addition to statutory partition, is part of the law of Vermont and that in reaching an equitable division of the parties' property, the court could employ equitable partition under the facts of this case.   In my view, 12 V.S.A. § 5161 does not apply in this instance, making equitable partition available and appropriate.   The arrangements concerning this leasehold were such that employing equitable partition was an appropriate method to arrive at an equitable division of the parties' property. That is not to say that resorting to partition was the only possible means to arrive at an equitable division, or that it is required to be used in similar circumstances.   Partition, whether employed under the statutory framework, or as a part of the court's equitable powers, is cumbersome, potentially expensive, and time-consuming.   Using it with every division of a leasehold interest that comes before the court in a divorce or civil proceeding among unmarried cohabitants, would

be unwise and unworkable.  In long-term lease situations, however, or those where valuation of the leasehold is particularly difficult, it should be one of the tools available to the trial court, in its discretion, in discharging its obligation to divide the parties' property in an equitable manner. See <u>Begin v. Benoit</u>, 2006 VT 130, ¶ 8, 181 Vt. 553, 915 A. 2d 786 (equitable division of personal property along with a statutory partition of joint tenancy in real property).  Accordingly, I concur.

 

_____

Associate Justice
