Filed 09/12/25

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-01000

| Stacey Boivin v. Jeremy Judkins |
| --- |

# ENTRY REGARDING MOTION

Title:          Motion for Preliminary Injunction (Motion: 1)
Filer:          Siobhan M. McCloskey
Filed Date:     July 28, 2025

Who gets Weasel the dog while this case is pending? That is the question before the court. A hearing on plaintiff Stacey Boivin's motion for a preliminary injunction to transfer custody of Weasel to her from defendant Jeremy Judkins was held on September 9, 2025. For the reasons set forth below, the motion is denied.

## Findings of Fact

The court makes the following findings of fact based on a preponderance of the evidence introduced at the motion hearing:

- Stacey and Jeremy were in a long-term relationship for nearly 30 years and lived together for more than 14 years.

- In August 2019, while they were living in a rental unit in Hyde Park, they adopted a pit bull terrier named "Weasel." Jeremy paid most of the adoption fee.

- The parties dispute who was intended to be Weasel's primary caretaker at the time of adoption and have presented conflicting versions of the adoption contract. This dispute is immaterial. The court finds that the parties adopted Weasel while they were a couple and intended to raise Weasel as a couple.

- In January 2020, the parties bought a home in Wolcott with several acres attached and trails nearby. Stacey paid the $20,000 down payment on the home. The parties both contributed to the mortgage payments.

- During the relationship, Stacey was responsible for more of Weasel's day-to-day care. She frequently brought him to work with her and was responsible for his veterinary care.

- Although Stacey paid the veterinary bills, Jeremy regularly deposited money into Stacey's account during the relationship to cover the couple's general expenses.

- In July 2024, the parties broke up after Jeremy began having an affair with another woman.

- The parties initially shared custody of Weasel following their separation, but after Stacey made clear she intended to maintain exclusive possession of the Wolcott home, Jeremy refused to return Weasel to Stacey. Stacey had not seen Weasel for nearly a year by the time this motion was filed.

- Weasel has lived with Jeremy at a camp he owns in Woodbury and, currently, at the home of his deceased aunt that Jeremy is renting in Wolcott. Jeremy lives alone with Weasel.

- Although the Woodbury camp lacks electricity and running water, the rental property has the usual amenities and is close to Jeremy's work. He comes home during his lunch break to walk Weasel.

- Jeremy has taken over responsibility for Weasel's veterinary care. He has removed Stacey from the veterinary account. Recent records do not suggest any significant health concerns but show that Weasel may be past due for several routine preventative treatments (heartworm, distemper, and flea/tick). Jeremy testified that he recently treated Weasel with an over-the-counter flea and tick treatment.

- Weasel is an important emotional support for Jeremy, who has has had Weasel certified as an emotional support animal.

- Stacey claims that Jeremy does not take appropriate care of Weasel. She described an incident in which Jeremy hit Weasel on the butt with a fly swatter, and another incident when Weasel ate Jeremy's cannabis and had to receive veterinary treatment. Both incidents occurred when the parties lived together. Stacey also claims that Jeremy takes Weasel hunting even though Weasel is afraid of guns. While the cannabis incident is concerning, it happened while the parties lived together and was appropriately addressed. The other alleged incidents do not raise significant concerns for Weasel's welfare. The court does not find that Jeremy is taking inappropriate care of Weasel, or that Weasel's welfare is currently at risk.

- Both parties are attached to Weasel and want exclusive custody of him. Although Stacey was initially willing to share custody, she no longer believes that is possible given the breakdown in trust and communication between the parties.

- Stacey filed the complaint in this case in March 2025 seeking partition of the Wolcott property, asserting various tort claims, and seeking replevin of personal property including Weasel.

- The motion for a preliminary injunction was filed on July 28, 2025.

## Conclusions of Law

Stacey seeks Weasel's return by way of preliminary injunction under Rule 65 of the Vermont Rules of Civil Procedure. Past cases involving similar claims have been brought both by preliminary injunction, as here, and by way of motion for writ of replevin under Rule 64. *See, e.g.*, *Sliger v. Cent. Vermont Humane Soc.*, No. 23-CV-00786, 2023 WL 2584355, at *6 (Vt. Super. Ct. Mar. 03, 2023) (Richardson, J.) (granting preliminary injunction for return of dog); *Satre v. Ralph*, No. 264-7-20 Wncv, 2020 WL 11232099 (Vt. Super. Ct. Nov. 24, 2020) (Bent, J.) (ordering replevin of dog).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586, 596, 178 A.3d 313 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The movant bears the burden of establishing that the relevant factors call for the imposition of a preliminary injunction. *Id.* Those factors are: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Id.* (citation omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held and to balance the equities as the litigation moves forward." *Lackey v. Stinnie*, 604 U.S. 192 (2025).

Considering the preliminary injunction factors here, the court concludes that the first, second, and fourth factors do not support interim injunctive relief. Both Stacey and Jeremy would be harmed by the loss of Weasel's companionship while the case plays out. Moreover, any claim of *irreparable* harm based on Stacey's separation from Weasel harm is undercut by her having waited nearly a year to file for preliminary relief. And this dispute does not implicate the public interest. Some people have dogs. Others don't. Life goes on for the rest of us. The public literally has no dog in this fight. Issues of public concern, such as the humane treatment of animals, may arise in the context of pet ownership, but such concerns are not presented here. The court does not find that Weasel's health or safety will be jeopardized by either party's ownership.

The remaining factor is whether Stacey is likely to succeed on the merits of the claim for the return of Weasel.[1] Although this is a civil partition action, it resembles a divorce case without the marriage. The parties were in a long-term relationship, lived together for many years, and now seek an equitable division of their property. The Vermont Supreme Court has stressed "the need for flexible remedies in equity" in partition cases of

---

[1] This is essentially the same question the court would have had asked had Stacey filed a motion for a writ of replevin when the case was filed. *See* V.R.C.P. 64(b)(2) ("The motion shall be filed with the complaint . . ."); (b)(3)(A) (writ of replevin may only issue if court finds "that there is a reasonable likelihood that the plaintiff will prevail").

this nature. *See Wynkoop v. Stratthaus*, 2016 VT 5, ¶ 20, 201 Vt. 158 (noting the "substantial line of partition cases involving property owned by unmarried partners in a marriage-like relationship"). The court accordingly looks to general equitable principles in both partition and domestic cases.

Domestic pets are considered personal property under Vermont law. As the Vermont Supreme Court has explained:

> This Court has consistently ruled that pet animals are property. But pets are different from other property. They are alive and form emotional attachments with their owners that run in both directions. Their long and intimate association with people gives rise to special concerns for their well-being and humane treatment. In most cases, they have little or no market value, but we spend generously to feed and care for them. . . . [T]hey frequently become close companions and an important part of daily life for countless owners.

*Hament v. Baker*, 2014 VT 39, ¶ 8, 196 Vt. 339. Because, however, a pet is ultimately considered property in the eyes of the law, a family court in a divorce case "must assign it to one party or the other" and lacks authority to order a visitation schedule that would require the court to maintain an ongoing supervisory role. *Id.*, ¶ 10.

Although the Civil Division has broader jurisdiction than the Family Division, concerns of judicial economy strongly support following the same approach here. In any event, neither party here seeks a judicially enforceable visitation schedule.

When assigning ownership of a pet, the Court in *Hament* directed family courts to focus on "[t]he welfare of the animal and the emotional connection between the animal and each spouse." *Id.*, ¶13. The Court explained:

> These factors underlie our animal welfare laws and our case law, which recognizes the value of the bond between the animal and its owner. Evidence concerning welfare of the animal includes evidence about its daily routine, comfort, and care. Evidence concerning the emotional connection may include testimony about the role of the animal in the lives of the spouses.

*Id.*, ¶ 13 (citation omitted). Considering these factors here, the court cannot conclude the balance tips substantially in either party's favor. Both parties have a strong bond with Weasel and are capable of providing him appropriate care. Stacey was very close with Weasel during the parties' relationship, but Weasel has been an important emotional support for Jeremy in the year since the parties' separation. Stacey was responsible for more of Weasel's daily routine during the parties' relationship, but Jeremy is now Weasel's sole caretaker. While Jeremy may be behind on some of his Weasel's routine vaccinations, Weasel has been receiving regular veterinary care, and there is no indication that the animal is unwell or at risk of harm.

Based on the current record, the court concludes that Stacey has not shown a significant likelihood of success on the merits of her claim to replevin Weasel such that the

"extraordinary and drastic remedy" of a preliminary injunction upsetting the status quo that has existed for the past year is appropriate. *See St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025).

## Order

The motion for a preliminary injunction is DENIED.

Electronically signed on: 9/12/2025 pursuant to V.R.E.F. 9(d)

Benjamin D. Battles
Superior Court Judge