Filed 12/30/25

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01030

**ESTATE OF DAWN DESJARDINS v. PATRICK THOMPSON et al**

## Findings, Conclusions, and Order

This partition action concerns 157 acres of land abutting Parish School Road in Glover owned by the parties as tenants-in-common. The parties waived the appointment of commissioners, and the case came before the court for a bench trial on September 11, 2025. The court orders partition in kind as set forth below.

## Findings of Fact

The decedent plaintiff Dawn Desjardins, appearing through her Estate, is the sister of defendants Patrick and Aaron Thompson. Dawn died in 2022 and is survived by her three daughters and heirs Ashley Hall—who is executor of Dawn's estate—Jenna Riendeau, and Alison Bass. For ease of reference, the court will refer to Dawn's daughters as plaintiffs. The property at the center of this action has been in the parties' family for more than a century. It was part of property owned by the parties' parents, who deeded an adjoining lot to Dawn and her husband John in 1994, and another adjoining lot to Patrick and his wife Julie in 2003. Later in 2003, the parents deeded approximately 157 acres to Dawn, Patrick, and Aaron as tenants-in-common.

Following Dawn's death in 2022, her interest in the property passed to plaintiffs. Plaintiffs seek partition in kind so that they can sell their portion of the property. Patrick and Aaron wish to retain their respective interests. Patrick lives with his wife on the adjoining lot. Aaron lives in Massachusetts but visits the property on occasion to hunt and camp. None of plaintiffs live on or near the property. Patrick and Aaron are on friendly terms with each other. Plaintiffs, however, no longer have any meaningful relationship with either of their uncles outside of the current dispute.

The parties generally agree that the property can be divided into three lots, which the parties have referred to as Lot A (Patrick's), Lot B (Aaron's), and Lot C (plaintiffs'). Lot A adjoins Patrick's existing lot where he resides, Lot B is undeveloped except for a gravel pit and Patrick's existing hunting camp, and Lot C is undeveloped.

The parties' dispute in this case is narrow and concerns the boundaries between Lots B and C. There is a homestead on the northern end at the intersection of Parish School Road and Thompson Place. The parties dispute whether the homestead should be included

1

as part of Lot B or Lot C. The homestead itself is in disrepair and is not habitable. It was previously occupied by the grandparents of Dawn, Patrick, and Aaron.

Plaintiffs wish to maximize the resale value of their lot by marketing it and selling it as developable property in which a new residence could be built on the existing homestead site. Plaintiffs further argue inclusion of the homestead site in Lot C is critical to ensure access from Parish School Road. Plaintiffs contend that the other areas of road frontage in Lot C, abutting Thomas Place, are too wet and swampy to permit construction of a driveway. Plaintiffs further argue that Aaron can access Lot B from Patrick's property or that he could improve an existing logging road that enters Lot B from Parish School Road.

Defendants dispute that inclusion of the homestead site is necessary for plaintiffs to have access. They argue that plaintiffs could have convenient access from Thomas Place. They also note that the property including the homestead has been in the property for more than a century, and that the homestead has significant emotional value to them. Defendants want to keep the homestead site in the family. Patrick also testified that Aaron should be able to use the existing right of access from Parish School Road and should not have to develop the logging road or obtain an easement from Patrick to cross Lot A.

Plaintiffs retained Gary Kuron, a certified residential real estate appraiser, to appraise the property as a whole and by lot. In his appraisal reports, Gary estimated the property had a $400,000 value as a single indivisible lot. If subdivided, he estimated the value of Lot A as $205,000, of Lot B (excluding the homestead site) as $149,000, and of Lot C (including the homestead site) as $159,000. Gary's appraisal was done without the benefit of a survey and was based on several hours spent walking the property. Gary testified at trial that he mistakenly understood the gravel pit as being on Lot A and not Lot B when he prepared his reports. He accordingly assigned $50,000 of value based on the gravel pit to Lot A instead of Lot B. Accordingly, considering this testimony, Gary's actual appraised value for Lot A is $155,000, the value for Lot B (excluding the homestead site) is $199,000, and the value for Lot C (including the homestead site) is $159,000.

Gary assigned a $10,000 value to the homestead site itself on account of the existing utilities. He also testified that having a reliable means of access adds value, but he did not specifically address the parties' arguments regarding the feasibility of accessing Lot C from Thomson Place or accessing Lot B from the existing logging road.

The court finds Gary's appraisals credible. Defendants have presented no alternative appraisals.

### Conclusions of Law

The parties agree that partition is appropriate because they own the property as tenants-in-common but do not wish to continue doing so. *See Wynkoop v. Stratthaus*, 2016 VT 5, ¶ 19, 201 Vt. 158 ("Partition is based upon the principle that no one can be compelled

to hold property with another, and it is available to anyone who does hold property in common with another." (quotation omitted)).

"A judgment for partition takes into consideration all of the equities arising out of the shared ownership of the property." *Cicio v. Bernasconi*, No. 20-1-09 Oecv, 2011 WL 8472979 (Vt. Super. Mar 2011) (Eaton, J.).

Considering the equities, the court finds plaintiffs' proposed subdivision fair and reasonable. It permits Patrick to retain Lot A, which adjoins his property. It permits Aaron to retain Lot B, which is the most valuable parcel because of the gravel pit. And it permits plaintiffs to retain Lot C with the homestead site, which will allow plaintiffs to market and sell the lot as developable property. Although defendants will lose the homestead site, which is emotionally significant for them, the court places less weight on this factor given that defendants have failed to maintain the homestead in a habitable condition. Moreover, it is appropriate to place the burden of developing an appropriate access route to Lot B— whether by improving the existing logging road or negotiating an easement with Patrick across Lot A—on Aaron, who is receiving the most valuable parcel.

## Order

The court orders partition of the property as set forth above. Plaintiffs shall submit a proposed judgment order for the court's review and approval by January 29, 2026.[1]

Electronically signed on: 12/30/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

---

[1] Defendants pled a counterclaim against the Estate for $6,000 based on Patrick's payment of $6,000 in property taxes. Defendants failed to prove by a preponderance of the evidence at the bench trial that they are entitled to relief on their counterclaim. Nothing in this decision should be interpreted as precluding defendants from seeking appropriate relief in the Probate Division.